**AETNA LIFE INSURANCE CO et al. v. STATE INDUSTRIAL COMMISSION et al.**

No. 14967—Opinion Filed March 24, 1925.

**1. Master and Servant — Workmen's Compensation Law— Finality of Industrial Commission's Decision on Facts.**

The decision of the Industrial Commission as to all matters of fact is final, if there is any evidence tending to support same.

**2. Same — Compensation for First Three Days—When not Allowed.**

Under section 6, chapter 14, Sess. Laws 1919, an employe who returned to work on the fourth day after an injury and continued therein for several months before becoming totally disabled, on being allowed compensation from the date of such total disability, is not entitled to compensation for such first three days.

**3. Same—Theory of Compensation Law.**

It is the general theory of the Workmen's Compensation Law that the industries of the state, to which the same is applicable, should compensate their injured employes in the reasonable amount and summary manner provided by the act.

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

Error from State Industrial Commission.

Action by Aetna Life Insurance Company and Golden Rod Mining & Smelting Company to review the award of the State Industrial Commission to J. Moore. Modified and affirmed.

Ross & Thurman, for plaintiffs in error.

Geo. F. Short, Atty. Gen., and Baxter Taylor, Asst. Atty. Gen., for defendants in error.

Opinion by ESTES, C. This is an appeal from an award of the State Industrial Commission in favor of J. Moore for $6.49 and compensation at the rate of $12.98 per week from August, 1923, until the termination of disability, or until otherwise ordered. It is provided by statute and upheld by numerous decisions of this court that the award of the commission is final as to all questions of fact, when there is some evidence to support the decision. The only error as

signed by the plaintiffs in error is that there is no evidence to support the award. It is uncontroverted that claimant was in the employ of the Golden Rod Mining & Smelting Company on October 27, 1922; that on that date he was injured by carbide explosion by which his eyelashes and eyebrows were burned off and the flesh of his face more or less burned; that he returned to work three days after the injuries, but was treated for about 20 days thereafter. The undisputed testimony of claimant is that up to the time of such accident his eyesight was good and that he had never had any trouble with his eyes. The record also shows that the claimant's vision began to fail him soon after the accident, and that on August 1, 1923, severe myopia —shortsightedness—had developed, he being unable to distinguish persons more than six feet away; that he lost 70 per cent. of the vision of one eye and 80 per cent. of the other; that cataracts developed simultaneously in each eye; that claimant was about 58 years of age; that traumatic cataracts —from a blow—generally develop in a short time and so-called senile cataracts generally develop gradually. By the experts of this record the cause of senile cataracts is speculative. Since the cataracts of claimant were months in developing, plaintiffs in error contend that his cataracts were senile and, therefore, not caused by the explosion. This contention, in effect, is that such is the only inference that could be drawn and that therefore there was no evidence to support the necessary conclusion of the commission that the explosion caused the injury. This was on the theory that such finding was, in effect, that trauma may cause senile cataract. Giving the opinion evidence of the medical experts all possible consideration, it must be observed that if they do not know the cause of senile cataracts, it does not follow that trauma or concussion may not be their cause. The human eye is a delicate organ and a carbide explosion doing injury to the face generally as shown by this record, must have been attended by considerable force. Their opinion that the blow of the explosion did not cause claimant's cataracts is as speculative as the cause of senile cataracts. The contention that there is no evidence whatever to support the decision is predicated largely on the testimony of these experts. On the other hand, the physician to whom the claimant was first sent was a general practitioner. On account of the complaint of claimant that his eyes were hurting him, this physician sent claimant to an expert. This eye specialist stated that the eyes showed some redness, and that the explosion was of sufficient force to injure the external eye of claimant. Later, another specialist found that a pterygium, or fleshy growth, had developed on each eye, and found that the eyes were normal except discoloration of the lens. It does not necessarily follow that because claimant's eyesight was good to the time of the explosion and began to fail him very soon thereafter, and after several months the cataracts developed, that the explosion caused the cataracts. However, such sequence of events is a strong circumstance to be considered with the evidence above recited, as bearing on the causal or proximate relation between the explosion and the cataracts. Thus there is positive evidence that the explosion caused the injuries to claimant's eyes, while the contention based on evidence of the experts that claimant's injuries were due to senile cataracts attendant upon old age, lacks the verity of positive proof and partakes of the nature of speculation.

Plaintiffs in error are correct in their contention that the commission erred in awarding the claimant $6.49 as compensation for a period of three days following the accident, since claimant returned to work on the fourth day after the accident and continued to work until the following August. The statute in force at the time of the injury provided that no compensation should be allowed for the first seven days of disability, except the medical benefits provided otherwise, provided, that should disability continue for 21 days or more, compensation should be computed from the date of the injury. Since the claimant herein was able to return to work in less than 21 days after the accident, no compensation should have been allowed him for the first three days during which he was disabled.

Plaintiffs in error also contend that the administration of the Workmen's Compensation Law in this state tends to subject industrial enterprises to payment for too many injuries. It argues for a restriction of such tendency by judicial construction for that the expenses of the insurance carriers must be borne ultimately by the industries. This contention, on its face, refutes itself. As we understand, it is the very purpose of such act that industries should compensate, in the reasonable amount and summary manner provided by the act, the injuries to employes, without whom there could be no industries. This purpose is well stated in State v. Clausen, 65 Wash.

156, 175, 117 Pac. 1101, 37 L. R. A. (N.S.) 466:

"It is founded on the basic principle that certain defined industries, called in the act extra hazardous, should be made to bear the financial losses sustained by the workmen engaged therein through personal injuries, and its purpose is to furnish a remedy that will reach every injury sustained by a workman engaged in any of such industries, and make a sure and certain award therefor, bearing a just proportion to the loss sustained, regardless of the manner in which the injury was received."

The New York Court of Appeals has shown a very broad conception of the principle underlying compensation statutes. That court declared, in effect, that such acts rest on the economic and humanitarian principle and that compensation should be given at the expense of the business to their employes, and that this benefit is not only for employes but for the state, which, otherwise, might be charged with their support, and that this purpose ought not to be defeated by placing a narrow limit upon the nature of the acts which will be regarded as pertaining to the employment. Matter of Waters v. William J. Taylor Co., 218 N. Y. 248, 112 N. E. 727. See, also, Bradbury's Workmen's Compensation (3rd Ed.) 6; 28 R. C. L. 712; Workmen's Compensation Acts (a Corpus Juris treatise) 7. This is in keeping with modern, progressive, humanitarian philosophy. The amount, while sure, ofttimes seems inadequate. Industries are protected from general damage suits, since the act supersedes the other rights and remedies of the parties. Being just between the industries and the employes, the act is beneficial to both. The last Legislature increased the compensation in case of permanent total disability and temporary total disability from 50 to 66 2-3 per centum of the average weekly wages of the employes, and otherwise strengthened the law. The legislative department of this state did this with full knowledge of the administration of the law by the State Industrial Commission, adverted to by plaintiffs in error, and in the face of the construction of the act by this court. Thus, the act, its administration by the commission, and the construction given thereto by this court have been approved by the law-making department. The contention of plaintiffs is thus foreclosed, since same is properly cognizable by the Legislature—not by this court. The Attorney General in his answer brief shows that during the year 1922, when the plaintiffs in error contend such tendency was manifest, that out of about 5,000 cases passed on by the commission, only 29 were

appealed to this court, and of these only four were reversed. Thus, as a functionary, the State Industrial Commission would seem to be amply justified.

It is recommended that the decision of the State Industrial Commission be modified as to the $6.49, and otherwise affirmed.

By the Court: It is so ordered.

Note.—See Cyc.—C. J. Workmen's Compensation Acts: Under (1) sec. 127; (2) sec. 82 (1926 Anno); (3) sec. 5. Also see under (1) anno. L. R. A. 1916A, p. 266; 28 R. C. L. pp 828; 3 R. C. L. Supp. p. 1600.