**Ann Self GENTRY, Appellant,**

**v.**

**E.I. DUPONT DE NEMOURS AND COMPANY, INC., Appellee.**

Supreme Court of Tennessee,
at Knoxville.

July 6, 1987.

Harry F. Burnette, Anita B. Hardeman, Brown, Dobson, Burnette & Kesler, Chattanooga, for appellant.

John W. Murrey III, Witt, Gaither & Whitaker, Chattanooga, for appellee.

OPINION

COOPER, Justice.

This is an appeal from the dismissal of an employee's claim for worker's compensation benefits. Plaintiff insists that the trial judge erred in finding that her emotional condition was not caused by an accident "within the bounds of the workers compensation [act]." On reviewing the record, we affirm the judgment entered in the trial court.

The plaintiff was a long-time employee of DuPont, and was assigned to do janitorial work during the 4:00 p.m. to midnight shift. The area she was assigned to clean included the administrative offices. Though she had been told not to use the office telephones, it was plaintiff's custom to use the telephones to call home and to take personal messages during her "nightly" break, which she took at about 10:00 p.m. She gave the office number to Frank McDaniel, who was an organizer for the United Steel Workers of America spearheading efforts to organize the Chattanooga Plant of DuPont. Mr. McDaniel would call plaintiff who would pass along rumors and information that could be helpful in the unionization campaign. On occasion, plaintiff met Mr. McDaniel away from the DuPont plant and their relationship soon progressed to the stage of intimacy.

On March 8, 1982, and after the unionization drive had terminated, DuPont established a travel reservations office in the plant. The office was staffed by a clerk four hours a day to give assistance to management employees in making travel arrangements. On the recommendation of the reservations clerk, a telephone message recorder was installed in the reservations office so that management personnel could make their travel needs known to the reservations clerk at times other than the four hours the office was manned. A memo describing the new procedure for making travel reservations through use of a telephone message recorder was circulated to forty designated persons, many of whom distributed copies to others. When activated, the machine played a 15-second prere-

corded message, and then the recorder came on.

On Friday, April 2, 1982, the plaintiff went into the reservations office during a routine break and received an incoming call from Mr. McDaniels. The entire conversation consisted of Mr. McDaniels stating that he would be in town within an hour, and Mrs. Gentry stating that she would get off from work at 11:00 o'clock and would meet him at the Dungeon. Wanda Harris, another janitor, was present in the room at the time of the conversation.

On Monday, April 5, 1982, the reservations clerk played back the telephone recording device and heard the conversation between plaintiff and Mr. McDaniel. He replayed the message for his supervisors, who directed him to erase the tape because it was a personal conversation. Those who heard the tape were directed not to repeat the conversation to anyone. No one recognized Mr. McDaniels' voice, but Mrs. Gentry's voice was identified. Mrs. Gentry's supervisor advised her of the recorded conversation, stated that the tape had been erased, reminded her that telephones in the management offices were not to be used for personal calls and that telephones were available in the janitor's office for personal use. According to plaintiff, the supervisor also asked her "was it good?" and later stated, "You're not a bad looking broad. If I wasn't so old, I'd take you on myself." This was denied by the supervisor.

Mrs. Gentry continued to work at Du-Pont without any apparent problem. Some two weeks, after the taping incident, Mrs. Gentry's son, Chuck, also an employee of DuPont, received an anonymous telephone call. The caller informed him of the taping incident and that management was out to get his mother's job. Since he was not informed of the content of the recording, Mr. Gentry asked his mother about the call. She told him that there was a taped conversation with Mr. McDaniels. Mr. Gentry knew Mr. McDaniels, having previously worked with him in the union campaign, and having met him once at a restaurant with his mother in connection with union activities. Following this conversation, Mrs. Gentry admitted to her son that she was having an affair with Mr. McDaniels. Her son immediately told his father and his sister of the affair, causing an estrangement between the members of the family.

Mrs. Gentry continued to work regularly until May 22, 1982, when she began to suffer severe chest pains similar to those she had been treated for on earlier occasions. Her cardiologist could find no medical problem and referred her for psychiatric evaluation. Drs. McDougall and Evans, psychiatrists, treated her briefly, concluded that she was not disabled, and directed her to return to work. Mrs. Gentry then went to Dr. Donald Ross Campbell for treatment. She described to him the emotional stress she was under, including an unhappy marriage, an unsatisfactory sex life with her husband who had been impotent for some fifteen years, the death of a child, the family conflict resulting from the disclosure of her affair with Mr. McDaniels, and the impending divorce from her husband. Dr. Campbell treated Mrs. Gentry for positive aggressive personality disorder—a condition where anger "is handled on an unconscious level and in a deliberate but unconscious behavorial way which is directed towards upsetting authority figures." The example was the transfer of passive aggressive behavior against her husband by having several affairs. At the time of her discharge from treatment by Dr. Campbell, he concluded that she had suffered no disability and was able to return to work at DuPont. Subsequently, Mrs. Gentry was treated by a psychologist and a psychiatrist, who expressed the opinion that Mrs. Gentry was unable to work under supervision and had a permanent disability of seventy to eighty percent.

After her discharge by Dr. Campbell, Mrs. Gentry obtained a job with the City of Rossville, Georgia, operating a senior citizens facility and serving noon meals daily to some sixty patrons. Subsequently, she obtained an additional part-time job serving as a magistrate issuing arrest warrants.

At the time of trial in May of 1986, she still held both of these jobs.

■ Disability from a mental or nervous illness is compensable when shown to be caused by an industrial, work-related accident. As is pointed out in *Jose v. Equifax, Inc.,* 556 S.W.2d 82, 84 (Tenn.1977),

> This Court is not inclined to limit recovery to cases involving physical, traumatic injury or to impose any other artificial limitation upon the coverage afforded by the compensation statutes. In proper cases, we are of the opinion that a mental stimulus, such as fright, shock or even excessive, unexpected anxiety could amount to an "accident" sufficient to justify an award for a resulting mental or nervous disorder.

However, even this liberal interpretation of the statutory criterion of injury by accident "does not embrace every stress or strain of daily living or every undesirable experience enountered in carrying out the duties of a contract of employment." *Jose v. Equifax, Inc. supra* at 84.

■ We agree with the trial court that the claim in this case goes beyond the parameters suggested in *Equifax.* There was no "fright, shock or even excessive, unexpected anxiety" from the recording of the telephone call. Mrs. Gentry knew that nothing was said in the taped conversation that was improper or in bad taste or would indicate that Mrs. Gentry was engaging in an extramarital affair. Some of her fellow workers were already aware that she received calls over the office telephones at DuPont, and that she had received them from Mr. McDaniel in the past. In fact, a fellow worker was with Mrs. Gentry when the conversation that was taped took place. Furthermore, Mrs. Gentry knew that the tape had been erased and that the supervisors who had heard the tape had been instructed not to repeat the conversation. There is no evidence that they did not follow the instruction. So far as the record shows, the conversation was never repeated until Mrs. Gentry told her son and then confessed that she was having an affair with Mr. McDaniels. The trial judge concluded that the stressful event that caused Mrs. Gentry's emotional problems was not the taping of the innocuous conversation she had with Mr. McDaniel, but was her subsequent disclosure of her affair with Mr. McDaniels and others and the resulting family friction. The trial judge further concluded that plaintiff's emotional problem was not due to an accident in the course and scope of plaintiff's employment. We think his conclusions are supported by evidence in the record.

It also should be noted that the trial judge commented at length on the medical testimony, expressing his belief in the verity of the testimony of Dr. Donald Campbell. The trial judge also commented on testimony of medical witnesses that Mrs. Gentry could not work under supervision. He then pointed out not only that several doctors had pronounced her able to work as a janitor for DuPont but the fact that she was holding down two jobs that have stress built-in and are positions of responsibility. From this we conclude that the trial judge was of the opinion that Mrs. Gentry had not proven any permanent disability as the result of her emotional problems. Certainly such a conclusion is justified under the evidence.

Judgment affirmed. Costs incident to the appeal are adjudged against Mrs. Gentry and her surety.

BROCK, C.J., and FONES, HARBISON and DROWOTA, JJ., concur.