No. 14248

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

CHARLES E. McGEE,

        Claimant and Appellant,

    -vs-

BECHTEL CORPORATION, Employer,

    and

INDUSTRIAL INDEMNITY COMPANY,

        Defendant and Respondent.

---

Appeal from: Workers' Compensation Court
          Honorable William E. Hunt, Judge presiding.

Counsel of Record:

    For Appellant:

        Burgess, Joyce, Prothero and Whelan, Butte, Montana

    For Respondent:

        Marra, Wenz, Iwen and Johnson, Great Falls, Montana

---

                 Submitted on briefs: November 3, 1978

                         Decided: JAN 30 1979

Filed: JAN 30 1979

*Thomas J. Kearney*
                                 Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Charles E. McGee, claimant, appeals from the amended findings of fact, conclusions of law and judgment dated March 6, 1978, entered by the Workers' Compensation Court, sitting in the Butte area, county of Deer Lodge. McGee's employer at the time of the industrial accident was Bechtel Corporation, and Industrial Indemnity Company was the industrial accident insurer for Bechtel.

The Workers' Compensation Court by its judgment decided that McGee was not entitled to permanent total disability benefits under the Workers' Compensation law and limited his recovery to the benefits recoverable under the specific injury statute (section 92-709, R.C.M. 1947) and to such temporary total disability compensation benefits as he had received while convalescing.

We sustain the decision of the Workers' Compensation Court.

McGee, then 35 years old, married and the father of four minor children, was employed as a pipefitter-plumber foreman in 1974 by Bechtel Corporation in the construction of the Arbiter Plant in Anaconda. About June 26, 1974, McGee's vision became blurred at work, not the result of any traumatic injury. That evening he consulted Dr. Burton, a Butte eye specialist, who diagnosed a detached retina in the right eye.

On arrangements made by Dr. Burton, McGee was examined by Dr. F. Tempel Riekhof, a Salt Lake City ophthalmologist, who specialized in ophthalmologic surgery. Dr. Riekhof found a giant tear in the retina of the right eye (a "giant tear" is one which extends more than 90 degrees around the peripheral part of the retina, in this case a tear

extending 150 to 160 degrees). He also found two areas of retinal degeneration and beginning detachment in the left eye, resulting from a genetic condition. The condition in the left eye was described as "lattice degeneration". The patient had no complaints regarding his left eye at the time of his initial examination.

On July 2, 1974, Dr. Reikhof performed surgery to reattach the retina of the claimant's right eye and during the same procedure also performed surgery on the left eye which he termed a "cryopexy", a procedure consisting of spot welding the two small areas where holes appeared in the lattice degeneration of the left eye.

Following his surgery, McGee returned home to recover. Sometime in July 1974, his vision had improved and he was released to work in a supervisory capacity. He returned to work as foreman on July 27, 1974. The apparent return to normality of the claimant's vision was an encouraging indication of the successful reattachment of the retina, according to Dr. Reikhof.

On July 27, 1974, while at work reading a blueprint, claimant was soundly slapped on the back by a well-wishing fellow employee. McGee immediately noticed the deterioration of the sight in his right eye and again sought medical treatment in Butte, Salt Lake City (Dr. Reikhof was not available), and finally in San Francisco, where Dr. Roger E. Atkins, attempted in surgical procedure to reattach the retina of the right eye. The attempt was unsuccessful. Dr. Atkins contemplated a second operation once the vitreous fluids cleared and the optic nerve became visible, and meanwhile advised McGee to return to Butte and consult his local eye specialist, Dr. Francis P. Nicholson, a Butte ophthalmologist.

-3-

In August 1974, McGee returned to San Francisco, where Dr. Atkins concluded the right eye retina could not be reattached. A vitreous fluid transplant was performed to avoid enucleating the right eye. However, vision in the eye was completely and permanently lost.

Before the Workers' Compensation Court, the employer-insurer contested whether an industrial accident had occurred here. The Workers' Compensation Court found that the injury did arise out of and in the course of his employment and was compensable. No appeal is taken by the employer-insurer on that point.

The main thrust of the proceedings before the Workers' Compensation Court was to determine whether McGee was permanently and totally disabled as a result of the loss of vision in his right eye, under the particular circumstances of this case. McGee was advised by Dr. Atkins, Dr. Nicholson, and also by Dr. George Sale, a Missoula ophthalmologist, that he should never return to work as a plumber, or any other work requiring rapid movement and physical strain because of the danger of a further detachment of the retina of his left eye with resulting total blindness, this being considered by the doctors a risk too great to take.

The letter from Dr. Atkins, dated March 31, 1976, states he did not feel that McGee was "in any way qualified from a physical standpoint to continue with this sort of heavy physical labor he had previously done. The only way in which he could become employable would be through a deep rehabilitative process which took him into a sedentary occupation requiring rather little in the way of reliance of good vision."

Dr. Nicholson's letter of March 23, 1976, stated:

". . . It is reasonable to expect further visual deterioration in Mr. McGee's left eye

-4-

in the future, and with this in mind, -
regardless of visual efficiency charts
or complex computative formulae, - in
my opinion, Mr. McGee has sustained
almost 100% visual disability.

"There is no question in my mind that he
should be proscribed from working for the
rest of his life."

Dr. Sale's letter of March 22, 1976, stated:

"Mr. McGee's occupation is that of a
pipefitter, which is entirely unsuitable
for a person who has had bilateral retinal
detachments . . ."

The condition of McGee at the time of the hearing was
that he had total and permanent loss of vision of his right
eye, and his left eye was correctable to 20/25, which
according to the A.M.A. evaluation of permanent visual
impairment comes to five percent loss of central vision in
his left eye.  His visual field in the left eye is normal.

Dr. Reikhof's opinion is completely contradictory to
that of the other doctors.  Dr. Reikhof testified, in essence,
that assuming that the retina in the left eye were successfully
repaired by the cryosurgery which he performed, he would
have no objection to Mr. McGee "going back to any type of
employment which did not carry a significance of a direct
blow to his head.  I believe that the reading of the morning
paper, if you will, is as potentially as traumatic to the
vitreous and the retina inside the eye, as anything he will
do on the job, any job. . ."  Dr. Reikhof would have no
objection to McGee picking up a 150 pound bale of hay, or
straining to have a bowel movement or any such thing that
might involve physical strain.  His opinion was that there
was no way that those kinds of things could result in a
retinal tear or a retinal detachment of the left eye.  He
further discounted the possibility of an adverse influence
on the good eye from a physiological interference arising
out of the loss of the right eye.

-5-

The Workers' Compensation Court specifically found that the lattice degeneration of the left eye of McGee and the small area of detachment found there originally did not result from an industrial accident, nor was the condition one that arose out of his employment. It further found that there was no evidence to sustain a finding that the claimant lost the sight of his left eye or that there was any causal connection between the deficiencies sustained by the claimant in the use of his left eye and any injury arising out of his work.

Thus, the net effect of the findings by the Workers' Compensation Court is that the claimant McGee lost the sight of his right eye in an industrial accident, but that the present condition of his left eye is genetically induced and is not the result of an industrial accident.

McGee further contends on appeal that he is in fact totally disabled because he has not engaged in any gainful employment since July 27, 1974 and that he dare not engage in work because of the danger of a further retinal detachment of his left eye.

In its amended finding of fact No. 15, the Workers' Compensation Court noted the disagreement of Dr. Reikhof and Dr. Nicholson as to whether a person who has had a detachment of the retina in one eye is more susceptible to a detachment of the other eye. While the court did not specifically indicate which doctor it agreed with, impliedly it accepted the testimony of Dr. Reikhof that further detachment of the retina in the good eye is uncommon, where the lattice degeneration in the good eye has been arrested by cryopexy.

The Workers' Compensation Court awarded claimant benefits under the specified injury statute allowing him 140 weeks of compensation for total blindness of one eye, in addition to the 26 weeks of convalescent disability benefits he had already received.

-6-

The issue confronting us in this case is clear. On the one hand the claimant McGee claims he is totally disabled, and has not worked since the industrial accident. Three doctors, including the surgeon who last operated on him, indicate he cannot do heavy physical work. On the other hand, the surgeon who performed the cryopexy and the first reattachment of the retina on his right eye maintains that the danger of bilateral detachment in his case is remote and commends him for any kind of physical labor, where he is not in danger of receiving a direct blow on the head. The Workers' Compensation Court found in accordance with the latter opinion. Whether this Court agrees is of no moment. Since credible and substantial evidence appears in the record in support of the Workers' Compensation Court, we are bound by its decision on the facts. Rule 52(a), Mont.R.Civ.P.; Smith v. Pierce Packing Co. and Pacific Insurance Co. (1978), ____ Mont. _____, 581 P.2d 834, 35 St.Rep. 979; Robins v. Anaconda Aluminum Company (1978), _____ Mont. _____, 575 P.2d 67, 35 St.Rep. 213; Bond v. St. Regis Paper Company (1977), _____ Mont. ____, 571 P.2d 372, 34 St.Rep. 1227, 1238.

The decision of the Workers' Compensation Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-7-