No. 82-483

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

_____

FREDERICK CONWAY,

Claimant and Respondent,

-vs-

BLACKFEET INDIAN DEVELOPERS,
INC., Employer,
        and
MISSOULA SERVICE CO.,

Defendant and Appellant.

_____

APPEAL FROM:  Workers' Compensation Court, The Honorable
Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Jardine, Stephenson, Blewett & Weaver; Dale
        Schwanke, Great Falls, Montana

    For Respondent:

        Donald R. Marble, Chester, Montana
        Norman H. Grosfield, Helena, Montana

_____

Submitted on Briefs:  June 16, 1983

Decided:  September 2, 1983

Filed:  SEP 2 - 1983

_____
                    Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Missoula Service Company, as adjuster for the insurance carrier of the employer, Blackfeet Indian Developers, Inc., appeals from a judgment of the Workers' Compensation Court awarding the claimant, Frederick Conway, permanent total disability benefits. The Workers' Compensation Court concluded that the injury which the claimant received in an industrial accident caused the claimant's multiple sclerosis to become symptomatic; and that therefore the claimant's subsequent disability from MS was a compensable injury under the Workers' Compensation Act.

On July 30, 1976, the claimant was operating a backhoe for the Blackfeet Indian Developers, Inc. as part of a sewer line construction project in the Heart Butte area. It was raining and windy that day making it impossible for the workers to measure accurately the depth of the sewer line ditch with the string lines. Therefore, the claimant and his co-workers decided to stop work for the day.

In exiting the backhoe, the claimant placed his left hand on the left door of the cab and his right hand on the handhold on the right side of the left door and pushed open the door. When the door opened, the wind caught it and jerked the claimant forward. The sudden jerk and the claimant's reaction caused the claimant's right hand to slip into the handhold. As the claimant dropped from the cab, his hand remained in the handhold and he was left dangling by his right hand for several seconds before he finally dropped to the ground.

Because the stabilizers which lift and support the backhoe in its normal operation were extended, the floor of the cab was approximately 5 1/2 feet off the ground and the handhold on the cab was approximately 8 1/2 feet off the ground.

Before the claimant fell to the ground, he shouted for help. A co-worker heard the shout and turned to see the claimant dangling from the cab.

Later that afternoon, the claimant began to experience pain and soreness in his right arm, shoulder and neck area. The claimant continued to experience pain and soreness through the weekend and therefore did not report to work the following Monday and Tuesday. Approximately nine days later, the claimant began to experience numbness in his right thumb. Soon after that, on August 10, 1976, the claimant sought medical attention for his pain and numbness. The numbness eventually expanded to his fingers, arms and toes over a period of two months. By December 1976, the claimant began to experience weakness in his left side. The source of the claimant's continuing numbness and weakness was diagnosed as multiple sclerosis sometime in 1977.

The claimant filed his claim for benefits under the Workers' Compensation Act. The claim was denied by Missoula Service Company on December 22, 1977. Claimant requested benefits three more times on June 15, 1978, August 28, 1978, and December 11, 1978. His request was denied each time. A petition for hearing before the Workers' Compensation Court was filed in April 1979. After a trial before the Hon. William E. Hunt, a decision was rendered by the Hon. Timothy W. Reardon on September 15, 1982, ordering Missoula Service Company to pay the claimant permanent total compensation

benefits and also medical benefits. A stay pending appeal was granted on November 3, 1982, and the notice of appeal was filed by Missoula Service Company on December 1, 1982.

Appellant raises the following issues on appeal:

1. Whether there is substantial, credible evidence to support the findings of fact of the Workers' Compensation Court.

2. Whether the findings of the Workers' Compensation Court are sufficient to support the conclusions of law based thereon.

The issue is essentially over the finding by the Workers' Compensation Court that the claimant's industrial accident caused the onset of disabling MS symptoms.

The insurer argues that because the medical community cannot determine with any degree of certainty what factors may precipitate an onset of MS symptoms, there is not substantial evidence that the trauma from the claimant's injury could cause the claimant's MS to become symptomatic.

The findings of the Workers' Compensation Court in this case come to us in an unusual stance. Rule 52(a), M.R.Civ.P. instructs that findings of a District Court shall not be set aside unless erroneous. We have extended this rule to findings made by the Workers' Compensation judge, McGee v. Bechtel Corp. (1979), 182 Mont. 149, 154, 595 P.2d 1156, 1159, but we are also usually careful to say that the Supreme Court in reviewing findings of the Workers' Compensation Court will look to the record to determine if there is substantial evidence to support the findings. Steffes v. 93 Leasing Co., Inc. (1978), 177 Mont. 83, 86, 580 P.2d 450, 452-453. If there is substantial evidence to support the findings and conclusions, we have said we are without power

to overturn the result in that court. Head v. Missoula Service Company (1979), 181 Mont. 129, 592 P.2d 507; Close v. St. Regis Paper Company (1977), 175 Mont. 158, 573 P.2d 163.

The question in this case is one of proximate cause. Did the injury sustained by the claimant cause MS or precipitate or aggravate an underlying but present MS condition? One doctor testifying for the employer said there is no causal, precipitative, or aggravating effect upon MS arising from injury of the type here, which he considered minor. Another doctor, testifying for the employer, felt the injury was of no significance because claimant, whose medical history indicated he was quick to seek medical help in other instances, waited 12 days before seeking help here, so that the injury must have been minor. A third doctor testifying for the claimant, stated his opinion that the injury described by claimant "precipitated" the outward symptoms of an underlying MS condition in the claimant.

All the medical persons agree: (1) claimant does indeed suffer from MS (rare among American Indians) and is disabled; (2) he will not recover from the active MS condition; (3) MS is a disease wherein the insulating substance covering nerve fibers in the central nervous system (myelin) is attacked, causing demyelinating lesions; (4) there is no known cause, only high probabilities; (5) some authorities believe in viral causation, others think the disease results from a defect in the body's immune system; (6) for unknown reasons, MS features remissions and exacerbations, and sometimes completely asymptomatic conditions of MS.

Medical authorities on causation run the stretch from "do not deny" that trauma can cause, precipitate, or

- 5 -

aggravate MS to "peripheral trauma appears" to be a precipitating factor in MS.

Against this background, the Workers' Compensation Court found that the "claimant's industrial accident proximately caused his MS to become symptomatic and disabling."

In making its finding, the Workers' Compensation Court did not agree with the "aggravation principle" of underlying or pre-existing diseases, nor did he accept without more the testimony of the claimant's medical doctor that the injury caused claimant's MS to become symptomatic. The court's rationale is best explained by its own words:

> "Given that the claimant's MS was pre-existing but asymptomatic prior to July 30, 1976, it would appear that the claimant's case is one of an aggravation of a pre-existing disease. Under this theory, the claimant could satisfy his burden of proof regarding proximate causation by evidence that it was medically possible that his July 30, 1976, accident made his MS symptomatic.
>
> ". . .
>
> "This Court does not find the theory of aggravation of a pre-existing condition applicable in this case. Although the claimant's MS, while asymptomatic, pre-existed his July 30, 1976, traumatic accident and although Dr. Nelson stated that trauma could have caused the claimant's MS to become symptomatic, the weight this Court can give Dr. Nelson's statement is severely limited because of the medical community's lack of knowledge regarding the cause and development of MS.
>
> "The extensive medical testimony elicited by both counsel can be reduced to two statements: (1) the cause of MS is unknown; (2) evidence regarding what may cause MS to become symptomatic is at best extremely tentative and at worst entirely speculative.
>
> "Against this background, Dr. Nelson's statement can be seen for what it is -- a concession to medical ignorance. Because the medical community cannot disprove that trauma may cause MS to become symptomatic, it does not follow that this failure is affirmative evidence of causation. For example, simply because one cannot conclusively disprove that there is intelligent life in distant galaxies, it does not follow that this failure is somehow proof of their existence. The failure merely

leaves the field clear for an argument that will affirm or refute the proposition.

"Similarly, Dr. Nelson's statement merely recognizes that current medical knowledge has not foreclosed the possibility that trauma can cause MS to become symptomatic. Although Dr. Nelson cited several articles in medical journals as the basis for his conclusion that trauma may cause MS in a person to become symptomatic, these articles also discuss causation only in terms of statistical correlations and tentative, inchoate possibilities. Those who investigate the cause of MS and what causes it to become symptomatic are at the frontier of medical science; until they have explored further no one will have affirmative evidence of what may cause MS to become symptomatic.

"This leaves the claimant in the seemingly impossible position of being required to prove proximate causation when there is no direct medical evidence on this point."

For his guidance and authority in deciding this case, the Workers' Compensation judge looked to the decision in Moffett v. Bozeman Canning Co. (1933), 95 Mont. 347, 26 P.2d 973. Moffett, a young man of 24 in good health, expecting to lift a 40 pound case of tins, lifted 80 pounds, and immediately felt pain in his right side and back at the top of his hip bone, and was unable to continue his work. The next day in the doctor's office, he was more nervous than is usual for a patient in the office; within three weeks he had a pronounced tremor in his left foot which spread to both legs, his tongue and his head. The medical witnesses agreed that the claimant was suffering from Parkinson's disease or a Parkinsonian syndrome. In Moffett, as in this case, two doctors testified that the lifting of the cases of tins could not have caused the Parkinsonian syndrome. One doctor testified that in his opinion Moffett's condition was caused by the lifting. Medical science at the time knew little of Parkinson's disease or Parkinsonian syndrome, and this Court found that the testimony of the experts was more in the

nature of surmises based upon the pathology of the disease rather than upon facts upon which a true hypothetical question as to the theoretical cause of the claimant's condition could be founded. This Court in Moffett went on to say with respect to the burden of proof imposed on the injured employee:

> "The record contains no direct evidence from which it can be said the injury was the proximate cause of claimant's present condition; this, not because of failure on the part of claimant properly to present his case, but because, on the frank admission of the doctors, no man on earth knows positively the exact cause of such an affliction in any given case; medical science has not advanced to a point where it can positively trace back from the effect and declare the cause of the disease in a given patient, but this fact alone need not bar the claimant from recovery, if, on the record, it can be said that he is entitled thereto.
>
> ". . .
>
> "The reasonable deductions from the record are as follows: Carl Moffett, a strong, healthy young man, suffered a traumatic injury arising out of and in the course of his employment, against the effect of which he was duly insured. He was thereafter never in condition to follow his vocation. His physical deterioration commenced with the injury and followed the usual course of the affliction from which he now suffers until he was totally and permanently disabled." 95 Mont. at 358, 359, 26 P.2d at 977, 978.

This is the Moffett rationale which was used by the Workers' Compensation judge in the case at bar to find in favor of the claimant:

> "Undeniably the Moffett court at several places expresses itself in language that strongly suggests that the theory on which the claimant was entitled to recover was that of an aggravation of a pre-existing condition. But the Moffett court never overcame the absence of affirmative evidence of causation; it merely recognized the absence of medical evidence and accepted as sufficient the coincidence between the claimant's trauma and the manifestation of Parkinson's disease and similar coincidences observed by persons the court could only bring itself to label as 'authorities.' But coincidence is not causation; an event following another event does not of itself establish causation. At most it may suggest a causal

- 8 -

relationship, and it is this suggestion, ultimately, and the purpose behind the Workers' Compensation Act, on which the Moffett court relied in finding the claimant's Parkinson's disease compensable."

Following that rationale, the Workers' Compensation judge applied the facts here and determined a "causal relationship" between Conway's injury from the handhold of the backhoe and the lighted-up symptoms of his MS:

"There is indirect evidence, i.e., a strong suggestion, that the claimant's traumatic accident caused the claimant's MS to be symptomatic. The claimant, while a healthy man, suffered a traumatic injury on July 30, 1976. Almost immediately thereafter he began to experience the numbness, and months later, the weakness which doctors later diagnosed as caused by his MS. On the basis of these events, the purpose of the Act and the medically undemonstrable proposition that trauma possibly causes MS to be symptomatic, this Court is left with the conviction that the claimant's traumatic injury proximately caused the claimant's MS to become symptomatic; the claimant's disability resulting from MS is, therefore a compensable injury."

The insurer in this case quarrels with the finding of the Workers' Compensation judge that prior to July 30, 1976, the claimant had no serious illnesses or injuries which required him to miss work for any significant period of time and that he had no MS symptoms before his accident of July 30, 1976. The insurer contends that there were two earlier manifestations of MS, one in May 1973, when he was seen at the Indian Health Service complaining of an inability to extend his right little finger which had not been injured. Another was in 1965, when the claimant was evaluated for possible rheumatoid arthritis and tingling and numbness in his feet.

The Workers' Compensation Court found that claimant had MS, but had no symptoms of MS before his accident on July 30, 1976. On this finding, we can state that the Workers'

Compensation Court was not clearly erroneous since the two claimed instances were not diagnosed as MS at the time, each several years prior to the manifest symptoms that occurred following the July 30, 1976, incident.

The insurer also maintains that the injuries suffered by the claimant here were not of sufficient magnitude either to aggravate his MS or to precipitate an onset of MS symptoms. The insurer also claims that Moffett should not apply here because in Moffett the medical authorities agreed that trauma could cause an onset of Parkinson's disease and all of the medical doctors were of the opinion that trauma precipitated the onset of such symptoms.

The contentions of the insurer are merely argumentative, and are the same as those contentions which were urged upon and rejected by the Workers' Compensation judge. The basic issue for us to decide in this case is whether we should in effect overrule the holding in Moffett to the effect that where medical science is unable to provide definitive answers, the Workers' Compensation Court should look to indirect evidence to establish causation.

We hold that the Moffett rationale is valid in cases where medical science is powerless to be of direct aid, and is especially applicable in this case. The indirect evidence of causation here is too strong to admit of cavil, or to be ignored. Here the wind, catching the opening door of the backhoe, jerked the claimant out of his cab with his hand caught in the handhold, and he was left dangling for some seconds before he was able to drop to the ground from a handhold height of about 8 1/2 feet. In the later afternoon, he complained of soreness to his right arm, shoulder and chest. Within a few days, he developed a numbness on his

right thumb and had a slight bruise on his right thumb. Within 12 days he was in the doctor's office complaining about a spread of the symptoms. His condition gradually deteriorated. There is no other conclusion to be made but that the onset of the symptoms began when he was jerked out of the backhoe cab. There is no other credible evidence but that prior to the July 30, 1976, incident, there was no outward manifestation of MS symptoms. It is entirely proper, as the Workers' Compensation Court found, that on the basis of these events, and considering the purpose of the Workers' Compensation Act, and the medically undemonstrable proposition that trauma does or does not cause MS to become symptomatic, there is nevertheless a conviction that the claimant's traumatic injury proximately caused his MS to become symptomatic and that therefore he suffered a compensable injury. We therefore affirm the Workers' Compensation Court on that point.

The Workers' Compensation Court did not apply the 10 percent penalty provided in section 39-71-2907, MCA, a point on which we further agree.

And now something further need be said to alert the legislature to the dreadful economic effect upon this claimant in pursuing his Workers' Compensation claim. He was injured on July 30, 1976. Through the administrative procedures before the Workers' Compensation Division and the eventual progress of the case through the Workers' Compensation Court, and this Court, more than 7 years have elapsed since claimant became disabled. In this case, the Workers' Compensation Court stayed the execution of his judgment pending appeal, which means that claimant has been without payments of compensation benefits. Although some

- 11 -

inherent institutional delay may be expected as a claim lumbers through the claims process, it is clear as day that a 7-year case time is intolerable to a worker. The blame rests squarely on the legislature. It has treated the Workers' Compensation Court as an orphan, leaving it understaffed, underfinanced and underquartered. It has practiced a false economy, because the burden of financing the Workers' Compensation Court is upon industry and those who suffer most from underfinancing are the helpless and the injured. If this case does not shake some legislator's conscience, perhaps nothing will.

Affirmed.

_____
John C. Sheehy
Justice

We Concur:

_____
John Conway Harrison

_____
Daniel J. Shea

_____

_____
Justices