No. 88-301

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

LINDA J. WINCHELL ,
(Richard M. Winchell, fatal),

Claimant ad Respondent,

-vs-

FALLS SHEET METAL,
Employer,
and
STATE COMPENSATION INSURANCE FUND,

Defendant and Appellant.

APPEAL FROM:  The Workers' Compensation Court, The Honorable
Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Charles R. Johnson; Marra, Wenz, Johnson & Hopkins,
Great Falls, Montana

For Respondent:

J. David Slovak; Ugrin, Alexander, Zadick & Slovak,
Great Falls, Montana

Submitted on Briefs:  Nov. 17, 1988

Decided:    January 5, 1989

ED SMITH

Clerk

FILED
5 AM 10 59
Filed:
89 JAN
MONTANA ... COURT

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Linda Winchell filed a claim for compensation following the death of her husband, Richard Winchell. The Workers' Compensation Court determined that Richard's death due to a ruptured congenital aneurysm was the result of a compensable injury within the meaning of the Workers' Compensation Act of 1985. The State Insurance Fund (State Fund) appeals from that determination. We affirm.

We consolidate the issues set forth by the State Fund into a single inquiry for purposes of our review:

Did the Workers' Compensation Court err in determining that Richard Winchell's death was the result of a compensable injury?

On December 6, 1985, Richard Winchell suffered a ruptured congenital brain aneurysm while performing his duties at Falls Sheet Metal, a family owned business in Great Falls, Montana. Richard was the president of Falls Sheet Metal, which was engaged in the sale, installation, and repair of heating and air-conditioning systems. He had been involved in the business for 31 years and his primary responsibilities were to perform warranty and service work on systems which Falls Sheet Metal installed.

The morning of December 6, 1985, Richard was preparing to convert a natural gas furnace to propane when he collapsed to the floor of the shop soon after arriving at work. He was discovered by his brother, Gary Winchell, and was transported to a local hospital where he died 5 days later without regaining consciousness. He was 44 years old and was survived by his wife Linda and their two minor children.

The cause of Richard's death is undisputed. He died of a "subarachnoid hemorrhage resulting from a ruptured

2

congenital saccular aneurysm of the intracranial arteries at the base of the brain." Through deposition testimony, a neurosurgeon described an aneurysm as "an out-pouching or bulging in the wall of a blood vessel due to a weakness in the wall. This outpouching is a thin inelastic wall, which may either turn to fibrous tissue, or it may become thinner and thinner and then eventually burst." The neurosurgeon testified that while Richard's aneurysm was not present from birth, as might be implied from the term "congenital," the predisposition or weakness was, and the aneurysm developed over the ensuing years.

All four of the medical experts deposed, including the neurosurgeon, agreed that hypertension is a major contributing factor to the growth of an aneurysm. One of the medical experts stressed the importance of treating high blood pressure in persons with a predisposition for an aneurysm, in order to deter the aggravation of a preexisting aneurysm. There was no evidence that Richard Winchell or his doctors were aware of any high blood pressure in the decedent prior to his death. A physician who examined Richard on two occasions during the year preceding his death testified that his blood pressure was normal on both dates. However, the autopsy revealed that Richard had suffered hypertension for several months prior to his death. The pathologist who performed the autopsy testified that the left ventricle of Richard's heart was enlarged, which is consistent with high blood pressure, and that the thickness of the left ventricular wall indicated hypertension had been present for at least months.

The medical experts agreed that hypertension can be sustained over a long period of time or it can be a temporary increase in blood pressure. The experts varied in their opinions about the causes of hypertension or what degree of hypertension would cause an aneurysm to rupture. Three of

3

the experts testified that mental stress or perceived mental stress could sufficiently raise a person's blood pressure. The fourth physician stated that mental stress was not known to play an active role in the rupture of an aneurysm, but he testified that mental stress can cause the release of adrenal hormones which has been linked to hypertension.

Vigorous physical activity and extreme emotional reactions were identified as other factors leading to a temporary increase in blood pressure. Finally, there was testimony to the effect that, regardless of conjecture, it is impossible for medical science to determine what actually caused Richard Winchell's aneurysm to rupture. On appeal, the State Fund contends that the claimant has failed to show, either through medical testimony or by other evidence, that the decedent's work had anything to do with his ruptured aneurysm.

Did the Workers' Compensation Court err in determining that Richard Winchell's death was the result of a compensable injury?

The standard of review to be applied is whether substantial credible evidence was presented to support the Workers' Compensation Court's determination that Richard Winchell died as a result of a compensable injury. Snyder v. San Francisco Feed and Grain (Mont. 1987), 748 P.2d 924, 929, 44 St.Rep. 2216, 2224. For Linda Winchell to be successful in her claim, she was required to prove that her husband's death resulted from an injury which arose out of and was in the course of his employment. Section 39-71-407, MCA (1985). In Snyder, this Court found a compensable injury under the 1985 Workers' Compensation Act where the claimant suffered a ruptured aneurysm which was shown to be aggravated to the point of rupture by mental strain due to the claimant's stressful work environment. Snyder, 748 P.2d at 930. Under

4

that theory it was necessary for Linda Winchell to bring forth evidence of a stressful work environment and to establish causation. We note that the legislature has amended the definition of "injury" under the 1987 Workers' Compensation Act to preclude recovery for injuries caused by physical or mental conditions which arise from emotional or mental stress, which is not applicable here. Section 39-71-119, MCA.

The Workers' Compensation Court correctly noted that because medical science is presently unable to determine exactly what caused Richard's aneurysm to rupture, it is necessary to look to indirect evidence to establish causation. Conway v. Blackfeet Indian Developers, Inc. (1983), 205 Mont. 459, 468, 669 P.2d 225, 229. The court referred to the testimony of the four medical experts and Richard's wife and brothers to determine whether his rupture could have been caused by hypertension due to a stressful work environment. We will review the court's findings of fact in this regard to see if they are supported by the evidence in the record.

The Workers' Compensation Court found that the period of September through the end of November is generally the most hectic time of year at Falls Sheet Metal. Customers who have problems with their heating systems usually wait until the cold sets in to have any repairs done. Recently installed systems, of which there were many during that period, often require warranty service to work out minor problems. It was Richard's responsibility to respond to those service and warranty calls. According to business records, Falls Sheet Metal performed 17 service calls during the month of November and 20 service calls during December of 1985. There was no documentation on how many warranty calls were made during that time. The court also found that November and December of 1985 were unusually cold months even for Montana, which

5

resulted in Richard's service calls often being of an emergency nature and requiring immediate attention. These findings are substantiated by the testimony of Gary Winchell, Richards' brother and co-owner of the family business, who handled many of the incoming service request calls during that period.

Detailed findings were made by the court regarding Richard Winchell's easygoing nature and uncomplaining attitude, which began to change during the weeks prior to his death. The court found Richard to be a taciturn man who liked to work at his own pace, was not accustomed to doing a lot of emergency type work, and would not express himself regarding any stresses or emotional or physical problems he might be experiencing. Although Gary Winchell testified that his brother did not appear any more hurried or busy during November, he did notice that Richard looked "kind of peaked."

The court made similar findings based on the testimony of Richard's wife Linda. During the weeks prior to his death, Richard appeared to be very fatigued and he complained of the terrible cold. He had become "crabbier and he barked at the children." He complained of chest pains and intermittent headaches, and told Linda that he was tired because they were "running their butts off" at the shop. One Friday night approximately 2 weeks prior to his collapse, Richard responded to two night-time service calls. That evening he came home from work complaining of fatigue and chills, and went to bed early. At 10:30 p.m. he was awakened by a telephone service call to which he responded and returned home an hour later. At 2:30 a.m. Richard was required to respond to another service call. He returned very tired and chilled, as it was 30 degrees below zero that night. Four days prior to his collapse, the court found that Richard suffered a debilitating headache which he described as feeling "like he had a

6

tumor in his head," and which caused him difficulty in sleeping for several days. Having reviewed the record, we conclude that the court's explicit findings regarding Richard's characteristic temperament and his apparent change in demeanor closely parallel the testimony of the brother and the wife, and that this is substantial evidence to support the court's findings.

Based on those findings, the court concluded that Richard's sudden change in demeanor was inconsistent with his easygoing nature, illustrating that he was undergoing a period of unusual stress. Given his tendency to keep his feelings and emotions to himself, we do not consider it unusual that Richard did not relate any stresses he might have felt to his family, much less discuss the source or implications of that stress.

The medical experts agreed that hypertension is a major contributory factor to the rupture of an aneurysm, and the pathologist's findings conclusively establish that Richard suffered hypertension for at least several months prior to his death. We note that there was no evidence indicating that any other facet of Richard's life outside of his work produced any stress or emotional strain. We conclude that the medical evidence together with the other evidence is sufficient to support the court's conclusion that Richard's death was the result of a compensable injury within the meaning of the Workers' Compensation Act of 1985.

Affirmed.

_____
Justice

We Concur:

John Conway Harrison

7

_John C. Sheehy_
_A. C. Gulbrandson_
_William E Hunt Sr_
Justices