No. 91-436

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

PAUL EASTMAN,

      Petitioner and Appellant,

  -vs-

TRANSPORT INSURANCE COMPANY
AND GARRETT FREIGHTLINES, INC.,

      Insurer, Defendant
      Employer and Respondents.

APPEAL FROM:  The Workers' Compensation Court,
              The Honorable Timothy Reardon, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

            Richard J. Martin, Alexander, Baucus & Linnell,
            Great Falls, Montana

      For Respondents:

            Sara R. Sexe, Marra Wenz, Johnson & Hopkins, Great
            Falls, Montana

Submitted on Briefs:  February 6, 1992

Decided: November 12, 1992

**FILED**

Filed: NOV 12 1992

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Paul Eastman appeals from the Workers' Compensation Court's determination that he did not prove by a preponderance of the evidence that an August, 1981, injury caused his disability and from the order denying a new trial. We affirm.

We state the issues on appeal as follows:

1. Did the Workers' Compensation Court err in concluding that the August, 1981, injury did not cause claimant's disability?

2. Did the Workers' Compensation Court err in denying the petition for new trial?

Paul Eastman (Eastman) was employed as a pick up and delivery driver for Garrett Freightlines (later ANR Freight Systems) from 1964 until March 31, 1990, when the Great Falls terminal closed. His job required the loading and delivery of heavy freight.

During the course of his employment, Eastman sustained four injuries to his neck. Eastman's first injury occurred on July 19, 1979, when falling freight struck his neck. On May 21, 1980, Eastman injured his neck while stacking tires. On March 19, 1981, Eastman fell down the steps of the loading dock. Truck Insurance Exchange was the insurer on risk at the time of these injuries. After each injury, Eastman received medical treatment from Dr. Pardis, a Great Falls chiropractor.

On August 31, 1981, Eastman injured his neck a fourth time while stacking pallets. Respondent Transport Insurance Company (Transport) was the insurer on risk. Eastman did not miss any work as a result of the injury. However, Eastman filed a claim for, and

2

Transport paid, compensation for medical expenses. Eastman received chiropractic treatment from Dr. Pardis until Transport required him to have an independent medical examination. Eastman was examined by Dr. Gaston Syrenne, a neurosurgeon, in April, 1982. Dr. Syrenne's diagnosis was mild neck sprain superimposed upon a degenerative disc disease and neurological deficit at C5-6.

Between 1983 and 1987, Eastman filed six additional workers' compensation claims. These claims concerned injuries to Eastman's middle back, legs and elbow. During this time, Eastman received no treatment on his neck. Eastman continued to perform the heavy duties of a pick up and delivery driver until the terminal closed in March of 1990. During this time, Eastman did not miss work due to his neck condition.

In 1988, Dr. Hachigan, a physician treating injuries to Eastman's knee and foot, referred Eastman to Dr. James Hinde for treatment of continuing problems in Eastman's neck and right shoulder. Dr. Hinde, a physiatrist, specializes in rehabilitating persons whose physical functions have been impaired by trauma, stroke or spinal chord injury. He diagnosed degenerative arthritis of the discs and joints in the neck (cervical spondylosis). Dr. Hinde stated that since 1982, Eastman's mild cervical spondylosis had become severe due to biomechanical forces operating over a decade on an injured spine, causing further disc narrowing and further malalignment. Dr. Hinde confirmed a deficit at C5-6 and referred Eastman to Dr. Paul Gorsuch, a neurosurgeon. Dr. Gorsuch performed anterior disc removal and fusion surgery on June 29,

3

1990.

On June 19, 1990, Eastman petitioned the Workers' Compensation Court for medical expenses, temporary total disability benefits, and permanent partial or permanent total disability benefits, claiming that his disability arose out of the August, 1981, injury. The hearing examiner concluded that Eastman did not prove by a preponderance of the credible evidence that the August, 1981, injury caused his disability. The Workers' Compensation Court adopted the examiner's Findings of Fact and Conclusions of Law and Proposed Judgment. Subsequently, the Workers' Compensation Court denied Eastman's petition for new trial, finding that the August, 1981, injury was only a temporary aggravation of Eastman's pre-existing degenerative disc disease. Eastman now appeals the judgment and order denying a new trial.

Did the Workers' Compensation Court err in concluding that the August, 1981, injury did not cause claimant's disability?

The Workers' Compensation Court determined that Eastman did not prove by a preponderance of the evidence that his current neck condition was caused by the August, 1981, injury. According to the court, Eastman's neck condition resulted from the gradual degeneration of his spondylosis and occasional aggravations to his neck.

The Workers' Compensation Court considered reports or deposition testimony from three physicians. Dr. Gaston Syrenne first saw Eastman on April 8, 1982, and noted that Eastman probably had developed a mild degenerative joint disease by that time. Dr.

4

Syrenne opined that degenerative arthritis was the main cause of Eastman's continuing neck pain. Dr. Syrenne noted that Eastman attributed the neck pain to an August, 1981, injury; however, Eastman described the precipitating injury to Dr. Syrenne as a fall down five steps at the dock, an injury that occurred on March 19, 1981.

Dr. James Hinde treated Eastman in 1988 and 1989. Dr. Hinde testified that since 1982, Eastman's mild cervical spondylosis had become severe. Dr. Hinde attributed Eastman's neck condition to many incidents, including everyday trauma and work activities, repetitive trauma and individual traumatic events. Dr. Hinde could not attribute Eastman's cervical spondylosis to a specific injury. Like Dr. Syrenne, Dr. Hinde testified that Eastman had attributed his neck and shoulder condition to a fall down five steps at the dock.

Dr. Paul Gorsuch concurred with Dr. Hinde that Eastman's degenerative condition was difficult to attribute to a specific event. Rather, Dr. Gorsuch attributed Eastman's condition to degenerative disc disease, cervical spondylosis, heavy work conditions and various trauma to his neck. Based on Eastman's representation that his pain intensified with the August, 1981, injury, Dr. Gorsuch initially concluded that that injury was primarily responsible for Eastman's condition. However, Dr. Gorsuch testified that if Eastman had the same symptoms prior to the injury, the injury was not a primary factor in Eastman's pain. Once Dr. Gorsuch learned of prior neck injuries, he testified that

5

the August, 1981, injury was relatively mild and less likely to exacerbate Eastman's symptoms.

Based on this medical evidence, the Workers' Compensation Court determined that the August, 1981, injury did not cause Eastman's current condition. Our standard for reviewing a decision of the Workers' Compensation Court is to determine if substantial evidence supports its findings and conclusions. When there is substantial evidence to support the Workers' Compensation Court, this Court cannot overturn the decision. Wood v. Consolidated Freightways, Inc. (1991), 248 Mont. 26, 28, 808 P.2d 502, 504.

In this case, Eastman must prove by the preponderance of the credible evidence that 1.) he suffered an injury arising out of and in the course of his employment; and 2.) the injury was the proximate cause of his disabling condition. Frost v. Anaconda Company (1985), 216 Mont. 387, 390, 701 P.2d 987, 988. Taken as a whole, the medical evidence supports the Workers' Compensation Court's determination that the August, 1981, injury did not cause Eastman's current condition. Eastman's neck condition predated the August, 1981, injury. Eastman received 65 chiropractic manipulations on his neck prior to that date. As a result of the August, 1981, injury, Eastman resumed chiropractic treatment with Dr. Pardis. At Transport's request, Eastman received medical treatment from Dr. Syrenne in April and May of 1982. The record reflects that this treatment was successful. Eastman testified that after Dr. Syrenne's treatment, his symptoms, as a whole, subsided. He sought no medical attention or treatment for his neck

6

from 1983 through 1987. Eastman continued to perform the heavy manual labor of a pick up and delivery driver until March of 1990, when the Great Falls terminal closed. During this time, Eastman did not miss any work as a result of his neck condition. Eastman testified that he would have continued working in that position if the terminal had remained open.

In July of 1989, Dr. Hinde reported that Eastman's condition related to the August, 1981, injury. Similarly, Dr. Gorsuch wrote Eastman's counsel in August of 1990 and attributed Eastman's pain symptomatology to the August, 1981, injury, although he determined that that injury did not cause Eastman's degenerative neck condition. Dr. Hinde's report and Dr. Gorsuch's correspondence subsequently were discredited by the doctors themselves. Drs. Hinde and Gorsuch testified to the importance of an accurate and detailed medical history in treating and determining the cause of a medical condition. However, Eastman failed to inform Dr. Hinde and Dr. Gorsuch of essential facts before each physician concluded that the August, 1981, injury caused his current condition. Eastman did not inform Drs. Hinde and Gorsuch of the July, 1979 or May, 1980, injuries, or injuries subsequent to August, 1981; that the fall down the dock steps occurred in March, 1981; that the August, 1981, injury involved reaching for freight; or the substantial number of chiropractic manipulations of his neck before and after the August, 1981, injury. Once these facts were disclosed, Dr. Hinde could not attribute Eastman's mild spondylosis in 1982, or its progression to severe spondylosis, to a specific

7

injury. Dr. Gorsuch testified that the August, 1981, injury was relatively mild compared to previous neck injuries and was therefore mechanically less likely to cause the exacerbation of his symptoms.

Eastman relies on deposition testimony from Dr. Hinde and Dr. Gorsuch to establish that it was medically possible for the August, 1981, injury to cause his current disability by aggravating his pre-existing condition. Eastman contends that where a claimant proves that it is medically possible for an injury to aggravate a pre-existing condition, the claimant has met his burden of proving causation under the Workers' Compensation Act.

Eastman's contention is an oversimplification of well-established principles concerning medical possibility evidence. It is true that when a claim is based on an aggravation of a pre-existing injury, as Eastman bases this claim, proof of medical possibility, in conjunction with other evidence, can support a grant of workers' compensation benefits. Hash v. Montana Silversmith (1991), 248 Mont. 155, 160, 810 P.2d 1174, 1177. However, we do not consider medical possibility evidence in a vacuum.

> "'Medical possibility' is to be weighed just as any other evidence; if supported by other, independent evidence it is 'acceptable' to be used by the court in making its determination. Medical possibility evidence by itself, though, does not mandate the conclusion that the claimant has met his burden of proof under the Act."

Currey v. 10 Minute Lube (1987), 226 Mont. 445, 449, 736 P.2d 113, 116 (citing Wheeler v. Carlson Transport (1985), 217 Mont. 254, 261, 704 P.2d 49, 53-54); Laber v. Skaggs Alpha Beta (1991), 247

8

Mont. 172, 177, 805 P.2d 1375, 1378.

Eastman contends that his medical possibility evidence is supported by the records of Drs. Pardis and Syrenne and his own testimony. The record reflects that Eastman has not been examined by either physician for his neck condition since 1983. Their records are not probative concerning the issue of whether Eastman's August, 1981, injury caused his current disability. Eastman's own statements attribute his current disability to the injury involving a fall down loading dock steps or, alternatively, to the August, 1981, injury. Such inconsistent statements do not provide significant corroboration of the medical possibility evidence. Accordingly, applying Currey to the record before us does not mandate a conclusion that Eastman has met his burden of proving the causal link between the August, 1981, injury and his current condition.

We conclude that substantial credible evidence supports the Workers' Compensation Court's determination that Eastman did not prove by a preponderance of the credible evidence that his disability was caused by the August, 1981, injury. The Workers' Compensation Court did not err.

Did the Workers' Compensation Court err in denying the petition for new trial?

Eastman filed a petition for new trial alleging that the Workers' Compensation Court omitted certain findings of fact, considered erroneous findings of fact, and failed to address his theory of aggravation of a pre-existing condition. The Workers'

9

Compensation Court denied the petition.

The Workers' Compensation Court's authority to grant a new trial is found in A.R.M. 24.5.344 and guided by the general rules of civil procedure. A new trial may be granted in cases tried by the court when an irregularity in the proceedings, accident or surprise, or newly discovered evidence materially affects substantial rights of a party. Sections 25-11-102(1), (3), (4); 25-11-103, M.R.Civ.P. (1991). Here, the Workers' Compensation Court determined that the findings were supported by substantial, credible evidence and that there were no grounds for a new trial.

Eastman contends that the Workers' Compensation Court erred in determining in its order denying the petition for new trial that the August, 1981, injury was merely a temporary aggravation of Eastman's pre-existing condition. Eastman asserts that the finding of temporary aggravation negates the Workers' Compensation Court's original findings and is not supported by the record. We disagree.

The finding of temporary aggravation is consistent with the Workers' Compensation Court's judgment denying benefits. Both the finding and the judgment are based on the same salient fact; namely, that the August, 1981, injury did not cause Eastman's current condition. The finding of a temporary aggravation is supported by the record. Eastman experienced headaches, sore neck and shoulder, and numbness in arms and hands prior to August, 1981, indicating that his neck condition predated the injury. Eastman testified that his symptoms, as a whole, subsided after Dr. Syrenne's treatment. Between 1982 and 1988, Eastman's mild

10

cervical spondylosis became severe. Dr. Hinde and Dr. Gorsuch attributed the deteriorization to natural degeneration, as well as other factors.

Allen v. Treasure State Plumbing (1990), 246 Mont. 105, 803 P.2d 644, is on point. In Allen, the claimant suffered successive injuries to his back, once in 1974, and again in 1977. The claimant filed a claim for permanent partial disability with the Workers' Compensation Court in 1987. The Workers' Compensation Court found, and we affirmed, that the 1977 injury was only a temporary aggravation of the claimant's pre-existing condition and was not the cause of claimant's disability in 1987. Thus, the insurer on risk in 1977 was liable only for benefits reasonably related to the temporary aggravation of claimant's condition. Here, Transport has paid the benefits reasonably related to the August, 1981, injury.

We conclude that substantial credible evidence exists to support the Workers' Compensation Court's finding that the August, 1981, injury temporarily aggravated Eastman's pre-existing condition. The finding of a temporary aggravation is consistent with the Workers' Compensation Court's determination that the August, 1981, injury did not cause his current disability. We hold that the Workers' Compensation Court did not err in denying Eastman's petition for new trial.

Affirmed.

_____
Justice

11

We concur:

_____
Chief Justice

_____

_____

_____
Justices

12

November 12, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Richard J. Martin
Alexander, Baucus & Linnell
P.O. Box 2629
Great Falls, MT  59403

Sara R. Sexe
Marra, Wenz, Johnson & Hopkins
P.O. Box 1525
Great Falls, MT  59403-1525

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
   Deputy