No. 91-549

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

TOM GILES,

      Claimant and Appellant,

  -vs-

BOZEMAN PUBLIC SCHOOLS,

      Employer,

  and

EBI/ORION GROUP,

      Defendant, Cross-Appellant
      and Respondent.

APPEAL FROM:   Workers' Compensation Court,
                The Honorable Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Marvin L. Howe; Simonton, Howe & Schneider,
          Glendive, Montana

      For Respondent:

          Joe C. Maynard; Crowley, Haughey, Hanson, Toole
          & Dietrich, Billings, Montana

FILED

Filed: MAR 18 1993

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: June 4, 1992

Decided: March 18, 1993

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Tom Giles appeals the findings of fact, conclusions of law, and judgment of the Workers' Compensation Court refusing to set aside a full and final compromise settlement agreement on the basis of a mutual mistake of material fact. EBI/Orion Group cross-appeals the court's conclusion that the claim was not barred by the statute of limitations. We affirm.

On June 26, 1987, Tom Giles (Giles) repaired an overhead light ballast in the course of his employment as a custodian with Bozeman Public Schools. While dismounting a ladder, Giles swung his leg over a desk in order to place his foot on the floor. Giles felt a sharp pain shoot through his back and, later, a tingling sensation in his legs. Over the next several days Giles' feet became completely numb; the numbness extended above his knees.

Giles reported the accident as an industrial injury. Giles' employer was enrolled under Compensation Plan No. 2 of the Workers' Compensation Act. Its insurer, EBI/Orion Group (EBI), accepted liability for the injury and paid $220.60 in weekly temporary total disability benefits.

Giles sought medical treatment and diagnosis from a number of physicians during the subsequent seventeen months. They were unable to conclusively diagnose his medical condition. Dr. Curt G. Kurtz, Giles' family physician, assessed his condition as a nerve irritation secondary to a twisting motion, but noted that Giles should be evaluated for multiple sclerosis (MS) if the symptoms

2

persisted. According to neurologist Herbert E. Prussack, the symptoms suggested a bilateral nerve irritation, possibly caused by a midline disc protrusion. Dr. Donald See, a physiatrist, conducted neurologic, orthopedic, and electrodiagnostic examinations of Giles' spine and extremities; the results were normal. Dr. James Johnson, a neurologist, had an MRI performed on Giles' spine. The MRI indicated possible early disc degeneration, but did not reveal disc herniations. Neurologist James Harkness was unable to diagnosis Giles' medical condition definitively.

In September of 1988, Giles requested a lump sum payment from EBI in the amount of $45,920 as a full and final settlement of permanent partial disability benefits. After subsequent negotiations, the parties settled the claim for a lump sum payment of $40,008.48. The Workers' Compensation Court approved the full and final compromise settlement agreement on December 20, 1988.

After the settlement was reached, Giles' symptoms became more severe. Dr. Harkness referred Giles to Dr. Dale Peterson, a neurologist. On August 8, 1989, Dr. Peterson diagnosed Giles' medical condition as MS based on the results of an MRI of the brain. The MS was mild to moderate in severity.

On August 9, 1990, Giles requested that EBI reopen the settlement agreement; EBI refused. Giles subsequently filed a petition with the Workers' Compensation Court requesting that the settlement agreement be set aside due to a mutual mistake of material fact. Giles alleged that at the time of settlement the parties mistakenly believed that Giles had injured his lower back

3

and that he had obtained maximum medical improvement. In addition to the issues related to mutual mistake, the issues presented to the Workers' Compensation Court for resolution included whether the injury caused the MS or caused it to become symptomatic, whether the MS was a compensable injury, and whether Giles' petition was barred by the statute of limitations.

The hearing examiner found that there was no mutual mistake of fact regarding Giles' medical condition. Furthermore, the examiner concluded that even if a mutual mistake existed regarding the MS, the mistake was not material to the settlement agreement because of the complete absence of medical testimony causally linking the multiple sclerosis to the injury. Finally, the examiner concluded that Giles' petition was not barred by the statute of limitations. On October 25, 1991, the Workers' Compensation Court adopted the examiner's findings of fact and conclusions of law and entered judgment accordingly. This appeal follows.

A full and final settlement agreement is a contract which can be set aside, under principles of contract law, if the parties to the agreement were operating under a mutual mistake of fact. Rath v. St. Labre Indian School (1991), 249 Mont. 433, 439, 816 P.2d 1061, 1064. A mistake of fact is statutorily defined:

> Mistake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake and consisting in:
>
> (1) an unconscious ignorance or forgetfulness of a fact, past or present, material to the contract; or
>
> (2) belief in the present existence of a thing material to the contract which does not exist or in the past existence of such a thing which has not existed.

4

Section 28-2-409, MCA. The statutory definition clearly requires that a mutual mistake concern a material fact before it can serve as a basis for setting aside the settlement agreement. Accordingly, we focus on whether the Workers' Compensation Court erred in concluding that any mutual mistake regarding the MS would not be material to the settlement agreement because no causation was established between the MS and the injury. Because of our resolution of this issue, we need not address the remaining issues.

The Workers' Compensation Court determined that even if Giles established a mutual mistake regarding his condition at the time the settlement agreement was entered into, the complete absence of medical testimony establishing a causal link between the MS and the injury precluded the reopening of the settlement agreement. According to the court, Dr. Peterson provided the only medical testimony regarding causation. He testified that it is not medically possible that the injury caused the MS to become symptomatic. Without a showing that the injury caused the MS, the court concluded that a mutual mistake regarding the MS was not material to the agreement and, therefore, would not serve as a basis for reopening the agreement.

Our standard for reviewing a decision of the Workers' Compensation Court is to determine whether substantial evidence supports its findings and conclusions. When substantial evidence exists to support the Workers' Compensation Court, this Court cannot overturn the decision. Eastman v. Transport, Ins. (Mont. 1992), 843 P.2d 300, 302, 49 St.Rep. 936, 937. Accordingly, we are

limited to determining whether substantial evidence exists in the record to support the Workers' Compensation Court's conclusion of lack of causation.

Dr. Peterson provided the only medical evidence regarding whether Giles' injury caused his MS. That testimony is as follows:

Q. [By Giles' attorney] Is it medically possible that Tom's accident on June 26, 1987, made his MS symptomatic?

A. No.

Q. Okay. I guess I'm having difficulty with that in that you indicated that he had an MS attack and it started on the date that he stepped down from the ladder. And that's the day his symptoms started. So I guess I'm -- Do you get what I'm getting at?

A. What is your question?

Q. Why wouldn't, I guess--why wouldn't it be medically possible that when Tom had his accident, stepped down from the ladder, twisted his back, and then he had numbness in his legs, why wouldn't that have caused his MS to now be symptomatic when there was nothing before?

A. Because this question has been looked at for 20, 25 years in the neurologic literature. MS has to begin sometime. And in an illness where we're never sure of the cause, the question of trauma affecting and other medical disorders causing it have been raised for years and years. There've been studies done in the neurologic literature to try to answer the question regarding trauma and MS, because it comes up from time to time. According to my reading, the synthesis of the literature currently is that one is on very tenuous grounds scientifically to suggest that trauma either by itself causes an MS attack or exacerbates an MS attack. And that's our current state of knowledge about it.

. . .

Q. [By EBI's attorney] Is it your opinion that Mr. Giles' MS was not caused or aggravated by the twisting injury that he suffered during the course and scope of his employment?

A. Yes.

6

Q.     Did I correctly hear you that you earlier indicated that it is not medically possible that the accident caused the MS to become symptomatic?

A.     Yes.

Dr. Peterson's testimony regarding the lack of causation between Giles' injury and his MS was unequivocal and undisputed. While acknowledging that experts in the medical field are not sure of the cause of MS, Dr. Peterson testified that Giles' MS was not caused by the June, 1987, injury, and that current scientific knowledge does not support a link between trauma and MS.

On the basis of this record, we conclude that substantial credible evidence supports the Workers' Compensation Court's conclusion that the June, 1987, injury did not cause the MS or cause the MS to become symptomatic. Based on this conclusion, the Workers' Compensation Court properly determined that any mutual mistake regarding Giles' condition at the time of the settlement agreement would not be material to the settlement agreement.

Relying on Moffett v. Bozeman Canning Co. (1933), 95 Mont. 347, 26 P.2d 973, and Conway v. Blackfeet Indian Developers, Inc. (1983), 205 Mont. 459, 669 P.2d 225, Giles contends that he need only present evidence relating the date of injury to the onset of the MS symptoms in order to establish that the injury caused the MS. He asserts that Moffett and Conway control here because the medical evidence presented at the hearing indicated that the cause of MS is unknown; he further argues that evidence regarding what may cause MS to become symptomatic is at best extremely tentative and at worst entirely speculative.

7

We note at the outset that Moffett and Conway do not stand for the proposition that a mere coincidence in time between an injury and the onset of disease symptoms mandates a determination that sufficient causal connection has been established. In both cases, the issue was whether sufficient evidence existed of a link between the injury and the disease--Parkinson's in Moffett, and MS in Conway--to support a judgment in favor of the claimant. We concluded in both cases that the indirect and circumstantial evidence of record was sufficient to uphold the judgment where direct evidence of causation was impossible to produce because of the state of medical knowledge. Here, the Workers' Compensation Court was not persuaded by the totality of the evidence produced that a causal link existed between Giles' injury and the MS, and we have concluded that the record is sufficient to support the court.

Furthermore, Moffett and Conway are distinguishable from the present case on the basis of the record in each. There, the medical witnesses gave conflicting testimony as to any connection between the injury and the disease. Moffett, 26 P.2d at 975; Conway, 669 P.2d at 226-27. In addition, in Moffett the record indicated that while medical science could not definitely establish the cause of the disease in an individual, the medical "authorities" generally agreed that there was a strong link between a trauma and the disease. Moffett, 26 P.2d at 978. In Conway, the question of whether trauma does or does not cause MS to become symptomatic was altogether "medically undemonstrable." Conway, 669 P.2d at 229-30.

8

No conflicting medical testimony exists on the record in this case. Dr. Peterson testified conclusively that Giles' injury did not cause or precipitate his MS; he further testified that it was not medically possible that Giles' accident caused the MS to become symptomatic. Finally, according to the evidence before us, current medical knowledge no longer supports a link between trauma and MS.

We hold that the Workers' Compensation Court did not err in declining to set aside the settlement agreement on the basis of a mutual mistake of material fact.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

9

March 18, 1993

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Marvin L. Howe
SIMONTON, HOWE & SCHNEIDER
P.O. Box 1250
Glendive, Mt 59330

JOE C. MAYNARD
Crowley, Haughey, Hanson, Toole & Dietrich
P.O. Box 2529
Billings, MT 59103-2529

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy