Sharon D. GLENN, Appellee,

v.

STATE of Oklahoma, ex rel., OKLA-
HOMA EMPLOYMENT SECURITY
COMMISSION, Appellant.

No. 70,997.

Court of Appeals of Oklahoma,
Division No. 2.

Feb. 7, 1989.

Rehearing Denied March 13, 1989.

Certiorari Denied Nov. 1, 1989.

Gary L. Butler, Garrette & Stockwell, Miami, for appellee.

Jim R. Sales, Gen. Counsel, Oklahoma Employment Sec. Com'n, Oklahoma City, for appellant.

MEANS, Judge.

Employer appeals from the trial court's order which overturned its denial of unemployment benefits to its employee, Sharon D. Glenn. The trial court found that Glenn had quit her job for good cause and had sustained her burden of proof in order to receive unemployment compensation. Having reviewed the record and applicable law, we affirm.

This appeal involves the unique situation where Defendant Oklahoma Employment Security Commission is both Sharon Glenn's former employer and the adjudicator of her unemployment benefits. In order to understand the Commission's repeated denial of unemployment benefits a brief recitation of the facts which led to Glenn's resignation is necessary.

Glenn served as a Manager I with the Oklahoma Employment Agency in its Miami office. She had worked in the Miami office for nearly sixteen years and had served as an assistant manager. Her responsibilities included supervision of other employees in the Miami office, including Ronald Radford.

The highest ranking employee at the Miami office was a Manager III, and when he retired, several persons including Glenn and Radford, applied for the job. Without exception Glenn had received substantially higher evaluations on job performances. Additionally, Radford's inadequate job performance had been discussed with him by Ms. Glenn, as his supervisor, and the Manager III on several occasions. Glenn held both bachelor's and master's degrees plus thirty hours toward an advanced degree. In contrast, Radford had only two years of college.

Despite these differences in qualifications and performance evaluations, Radford was hired to fill the Manager III position. From Glenn's perspective a person with no proven credentials or qualifications, whom she had previously supervised for years, was now her supervisor. Additionally, she learned that Radford's previous position would not be filled, thus imposing on her a substantially greater workload.

Subsequently, Glenn experienced severe health problems, diagnosed by her treating physician and a psychiatrist as "[s]evere reactive depression directly related to not being promoted at her place of employment when qualified to do the work." Both doctors advised her to quit her job. Although she attempted to return to work, she found the job conditions untenable and tendered her resignation. In her application for unemployment benefits, she answered the question, "Why did you think it was necessary to quit?" in the following:

I was denied promotion to a Manager III position for which I was fully qualified. My employer promoted a man with lesser qualifications than I. I had been his supervisor for 10 yrs. I felt compelled to resign my position of Manager I due to the humiliation, embarassment and mental anguish of this act of sexual discrimination. I felt this was a most unjust and untenable situation.

Shortly thereafter, Glenn's application for unemployment compensation was disallowed, with the statement that "[s]he has not shown good cause connected to the work for quitting and benefits are denied." Glenn pursued her claim to the appeal tribunal of the Commission which also denied benefits. She continued her appeal to the Board of Review for the Commission which, not surprisingly, affirmed the tribunal's "finding the claimant voluntarily left her last employment without good cause connected to the work."

After obtaining adverse decisions through the entire administrative procedure with her former employer as adjudicator, Glenn appealed to the district court. After examining the proceedings below, the court reversed the Board of Review's denial of unemployment compensation. Unlike the administrative agencies, the court made extensive findings of fact and conclusions of law. Using the statutes, the Commission's procedure manual, and the evidence presented at the administrative hearings, the court concluded that Glenn's medical condition had a "causal connection" with her employment and that she had sustained the burden to show she was entitled to unemployment compensation benefits.

On appeal to this court, the Commission complains that the court erred in substituting his decision over that of the Board of Review. The Commission also complains that Glenn should be denied benefits because she failed to follow certain internal grievance procedures prior to quitting in order to protect her rights. Finally, the Commission argues that the court erred in finding that the Board of Review made incomplete findings of fact.

■ We find no merit to the Commission's argument that Glenn was required to file a grievance with her employer as a prerequisite to good cause for quitting her job. The Oklahoma statutes do not require such prerequisite to the application of the

**152**

good cause standard. *See* 40 O.S.1981 §§ 2–404 and 2–405.. The statutes do not even hint at subjecting certain persons to a special standard for unemployment compensation merely because those individuals work for the Commission. In fact, the stated policy of Oklahoma's Employment Security Act is to benefit all "persons unemployed through no fault of their own." 40 O.S.1981 § 1–103. This group of persons, of necessity, includes those who quit their jobs for "good cause."

■ Section 2–405 defines "good cause" to include "a job working condition that had changed to such a degree it was so harmful, detrimental, or adverse to the individual's health, safety, or morals, that leaving such work was justified." The Commission did not dispute the trial court's finding that Glenn had quit her job based on her doctors' recommendations. However, the Commission argues that the court erred in finding that Glenn's health problems were job-related.

Sitting as an appeal tribunal the district court must review the administrative record presented below. *In re White*, 355 P.2d 404, 406 (Okla.1960). In so doing the court determines whether error of law was committed in the hearing and whether the findings of the administrative agency are supported by substantial evidence. *Vester v. Board of Review*, 697 P.2d 533, 536 (Okla.1985). The reviewing court looks to the entire record, including evidence opposed to the finding, in determining whether an order is supported by substantial evidence. *Banking Board v. Wilkerson*, 642 P.2d 1141, 1143 (Okl.1982). Clearly the district court has the power to reverse an administrative decision which is not supported by the evidence. *Vester*, 697 P.2d at 538–39.

The district court's extensive findings of fact and conclusions of law are supported by substantial evidence. The undisputed evidence showed that Glenn found it impossible to continue with her job after her subordinate was appointed as her supervisor. Her work load increased and she became extremely depressed. She sought medical attention and then attempted to return to work. When her work conditions became untenable she decided to resign. Using the Commission's own procedures, the district court found that "[w]ork that contributes to an illness is held to constitute good cause for leaving employment." The court also specifically found that because she was a former employee, Glenn's application for unemployment benefits had been treated differently from other applications which the Commission normally processes.

In examining the entire record, the district court concluded that Glenn had met her burden of proof and was entitled to unemployment benefits. The court's order which reversed the Board of Review's denial of unemployment compensation is supported by substantial evidence and is affirmed.

REIF, P.J., and STUBBLEFIELD, J., concur.