**James Richard FENWICK, Petitioner,**

v.

**OKLAHOMA STATE PENITENTIARY, State Insurance Fund, and Workers' Compensation Court, Respondents.**

No. 69691.

Supreme Court of Oklahoma.

May 15, 1990.

Crowe & Dunlevy by Randal A. Sengel, Oklahoma City, for petitioner.

Fred Nicholas, Jr. and Gary L. Warden, State Ins. Fund, Oklahoma City, for respondent Ins. Carrier.

HODGES, Justice.

This case arose after James R. Fenwick (Claimant) sought workers' compensation for permanent partial disability. The Workers' Compensation Court found that Claimant had not suffered an accidental injury. The Oklahoma Court of Appeals reversed the Workers' Compensation Court, and this Court granted the Petition for Writ of Certiorari. The issue on appeal is whether the claimant's mental stress, which arose out of an isolated incident, without any accompanying physical injury is compensable under the Workers' Compensation Act. We find that it is not.

On August 8, 1979, Claimant, while working as a psychological assistant at the Oklahoma State Penitentiary, encountered a situation where four women were being held hostage by an inmate. Claimant negotiated the release of three of the hostages in exchange for himself. Subsequently, the fourth woman was released. After being held hostage for approximately four and one-half hours, Claimant was released without physical injury.

Although Claimant took two days off work immediately following the hostage incident, he continued to work in the same position until October 1, 1982. At that time he resigned to take a similar job with the Carl Albert Community Mental Health Center.

On July 9, 1982, Claimant filed his Form 3 seeking disability compensation. The State Insurance Fund paid for Claimant's medical and psychiatric treatment until April, 1986. Then on January 6, 1987, Claimant filed a Form 9 seeking permanent partial disability.

Claimant was diagnosed by Dr. Nolan L. Armstrong as suffering from major depression, generalized anxiety disorder, and post-traumatic stress disorder. He was diagnosed by Dr. Larry M. Prater as suffering from post-traumatic stress disorder and personality disorder. Although Claimant complains of periodic shakiness, headaches, tingling in the hands, discomfort in the pit of his stomach, and several other physical disorders, none of the diagnosis included physical injury.

An employee is entitled to compensation, regardless of fault, when the employee suffers disability or death "resulting from an accidental personal injury ... arising out of and in the course of his employment."[1] The causation of the claimant's mental dis-

1. Okla.Stat. tit. 85, § 11 (1981).

orders are not disputed leaving the question of accidental personal injury as the only issue.

A definition of injury is provided in the Workers' Compensation Act (the Act) itself.[2] This definition is more repetitive of the requirements set out under section 11 than it is definitive. Since the definition in the Act is not comprehensive, it has been the duty of the courts to further define "accidental personal injury."

■■■ This Court has long recognized that "[a] disease of the mind or body which arises in the course of employment, with nothing more" is not an accidental injury and, thus, not compensable.[3] Claimant argues that the additional element requirement of "nothing more" is satisfied by the fact that the event which caused his stress is a definite and identifiable occurrence. This is not the case. This Court has consistently held that physical injury must be present for a disability to be compensable.[4] Just as physical symptoms such as pain, tingling of the limbs, and nausea do not constitute accidental injury,[5] neither does mental stress. Because there is no evidence in the present case that Claimant suffered any physical injury, he has not shown that he suffered an accidental injury. Therefore, his disability is not compensable under the Act.

In *Daugherty v. ITT Continental Baking Company,*[6] the claimant suffered from mental stress, without accompanying physical injury, after her company's sales manager and his superior visited her at her work location, criticized her job perform-

ance, and asked for her resignation. This Court held that the claimant had not suffered an accidental injury as defined by the Act.

We reached the same result in *Vernon v. Seven–Eleven Stores.*[7] Claimant failed a polygraph test which resulted in his being discharged. He then received psychiatric treatment but did not suffer physical injury. The claimant's doctor testified that the claimant's mental problems were caused by the polygraph test and the subsequent events. We found that the claimant had not suffered an injury compensable under the Act.

In *Haynes v. Pryor High School,*[8] a coach suffered chest pains after trotting uphill 50–100 yards, but there was no evidence of myocardial infarction. We found that pain with actual physical injury was insufficient to constitute an accidental injury. Thus, compensation was denied.

All of these cases involved mental stress or physical pain unaccompanied by a physical injury and caused by an identifiable event which occurred at a definite time. Yet, in all three cases, the claimant's disability was not compensable. The present case presents the same situation. Here we have a disability without any evidence of a physical injury, caused by an identifiable event which occurred at a definite time.

For the first time in 1977, the American Medical Association (AMA) included a chapter on the evaluation of mental disorders in its guidelines.[9] Then in 1985, the Legislature mandated that the AMA's guidelines

---

2. Okla.Stat. tit. 85, § 3(7) (1981) provides:

   "Injury or personal injury" means only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally result therefrom and occupational disease arising out of and in the course of employment as herein defined. Provided, only injuries having as their source a risk not purely personal but one that is reasonably connected with the conditions of employment shall be deemed to arise out of the employment.

3. *Keeling v. State Industrial Court,* 389 P.2d 487, 491 (Okla.1964) (quoting *Shoren v. United States Rubber Company,* 87 R.I. 319, 140 A.2d 768 (1958)).

4. *See Haynes v. Pryor High School,* 566 P.2d 852 (Okla.1976); *Daugherty v. ITT Continental Baking Company,* 558 P.2d 393 (Okla.1976); *Vernon v. Seven–Eleven Stores,* 547 P.2d 1300 (Okla. 1976).

5. *Haynes,* 566 P.2d at 854.

6. 558 P.2d 393 (Okla.1976).

7. 547 P.2d 1300 (Okla.1976).

8. 566 P.2d 852 (Okla.1976).

9. American Medical Association, *Guides to Evaluation of Permanent Impairment,* p. 149 (AMA 1977).

were to be used by physicians when evaluating impairment.[10] The legislative intent behind this mandate was to provide some consistency in the evaluations of mental disorders accompanied by physical injury. Had the Legislature intended to make disabilities from mental disorders without accompanying physical injury compensable, they would have changed the statutory definition of injury [11] rather than only including a method for consistently evaluating mental disorders.

It has long been the rule that disability, either mental or physical, which is not accompanied by a physical injury is not compensible under the Act.[12] This rule is based on the statutory definition of injury.[13] This definition has remained substantially unchanged since 1915 [14] even though the Act has frequently been amended. In fact, the Act has been amended annually since the establishment of this rule.

In *Lekan v. P & L Fire Protection Co.*,[15] we stated:

> Legislative familiarity with extant judicial construction of statutes in the process of being amended is presumed. Unless a contrary intent clearly appears or is plainly expressed, the terms of amendatory acts which retain the same, or not substantially dissimilar, portions of provisions formerly in force will be accorded the construction identical to that placed upon them by preexisting case law.

Since the Legislature has not substantially changed the statutory definition of inju-

ry, nor has it enacted any statute which would conflict with our prior decision, we must presume that the Legislature is in agreement with our judicial interpretation. Therefore, without a legislative mandate, we decline to alter the rule that disability unaccompanied by physical injury is not compensable under the Act. The Workers' Compensation Court was correct in ruling that Claimant was not entitled to compensation.

CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS' OPINION VACATED; ORDER OF THE WORKERS' COMPENSATION COURT SUSTAINED.

HARGRAVE, C.J., and LAVENDER, SIMMS and SUMMERS, JJ., concur.

OPALA, V.C.J., and DOOLIN, ALMA WILSON and KAUGER, JJ., dissent.

OPALA, Vice Chief Justice, with whom KAUGER, Justice, joins, dissenting.

Today the court reiterates extant precedent holding *work-related* psychic trauma *unaccompanied* by physical injury to be noncompensable. I recede from this pronouncement and join the dissent by Kauger, J. For me, *there is no textually demonstrable legislative intent to exclude from compensability those accidental injuries that result in mental scarring alone.* I write separately to explain why I cannot accede to the court's exposition of the governing act.[1]

---

**10.** Okla.Stat. tit. 85, § 3(11) (Supp.1985) provides in part:

[A]ny examining physician shall evaluate impairment in substantial accordance with such guides to the evaluation of permanent impairment as have been officially approved by a majority of the Workers' Compensation Court. These guides may include, but shall not be limited to, the "Guides to the Evaluation of Permanent Impairment" published in 1971 by the American Medical Association....

**11.** *See supra* note 2 and accompanying text.

**12.** *Vernon v. Seven–Eleven Stores*, 547 P.2d 1300 (Okla.1976); *Daugherty v. ITT Continental Baking Co.*, 558 P.2d 393 (Okla.1976). There is no need to discuss the definition of "occupational

disease" since the Claimant has only alleged that he suffered a disability resulting from "accidental injury."

**13.** See, Okla.Stat. tit. 85, § 3(7) (1981).

**14.** 1915 Okla.Sess.Laws 575 states:

7. "Injury or personal injury" means only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally and unavoidably result therefrom.

**15.** 609 P.2d 1289, 1292 (Okla.1980).

**1.** The Workers' Compensation Act, 85 O.S.1981 §§ 1 et seq.

## I.

### NEITHER PROCEDURAL NOR SUBSTANTIVE NORMS OF THE COMMON LAW HAVE A PLACE IN THE COMPENSATION LAW'S REPARATIONS REGIME

The rule that work-related psychic injury must be connected with or accompanied by some physical trauma before it may be compensable is well established in Oklahoma's workers' compensation jurisprudence.[2] This judicially crafted restriction on coverage is doubtless derived from last century's *common-law* principle of *tort* liability, which holds that without physical injury *no* damages for mental anguish may be recovered, *either* ex contractu[3] *or* ex delicto.[4] The workers' compensation reparations regime *has no common-law antecedents;* it is traceable to an English *statute* modeled after a German prototype of the Bismarck era.[5] Because the noncompensability of psychotrauma *sans* physical injury stands without any trace of explicit or implicit legislative warrant[6] and comes *solely* from the common law tradition, the concept is a foreign transplant that has no place in the textual exposition of the workers' compensation statute.[7]

*This court has consistently rejected and condemned past attempts to infuse common-law norms into the scheme of reparations that governs on-the-job harm.*[8] The statutory compensation law "is an act of the Legislature complete in itself."[9] *"Almost every major error that can be observed in the development of compensation law,* whether judicial or legislative, *can be traced either to the importation of tort ideas,* or, less frequently, to the assumption that the right to compensation resembles the right to the proceeds of a

---

2. See *Keeling v. State Industrial Court,* Okl., 389 P.2d 487 (1964) (syllabus ¶ 1 by the court); *Daugherty v. ITT Continental Baking Company,* Okl., 558 P.2d 393, 395 (1976). The precise issue in *Keeling* was whether the claimant's "nervous breakdown" from a posture assumed while operating a sewing machine constituted an accidental injury, *not* whether the functional loss was recoverable. There, in denying the claim the court relied upon *Rialto Lead & Zinc Co. v. State Industrial Commission,* 112 Okl. 101, 240 P. 96 (1925), where *mental dysfunction from a work-related physical injury* was held compensable.

3. See *Seidenbach's, Inc. v. Williams,* Okl., 361 P.2d 185 (1961) (the court's syllabus ¶ 1).

4. For English and early American authorities announcing this rule, see *Lynch v. Knight,* 9 H.L.C. 577, 598, 11 Eng.Rep. 854 (1861); *Victorian Railway Comrs. v. Coultas,* (1888 Eng.) L.R. 13 App.Cas. 222, 8 E.R.C. 405—PC; *Spade v. Lynn & B.R. Co.,* 168 Mass. 285, 47 N.E. 88 (1897). On this point Oklahoma cases include *Butner v. Western Union Tel. Co.,* 2 Okl. 234, 37 P. 1087 (1894) (the court's syllabus ¶ 5); *Western Union Telegraph Co. v. Choteau,* 28 Okl. 664, 115 P. 879 (1911) (the court's syllabus); *St. Louis & San Francisco Ry. Co. v. Keiffer,* 48 Okl. 434, 150 P. 1026 (1915) (the court's syllabus ¶ 3); *Van Hoy v. Oklahoma Coca-Cola Bottling Co.,* 205 Okl. 135, 235 P.2d 948 (1951) (the court's syllabus ¶ 1); *Jines v. City of Norman,* Okl., 351 P.2d 1048, 1049 (1960) (the court's syllabus ¶ 4).

5. See 1 Larson, Workmens' Compensation Law, § 5.10 at 33–34.

6. At common law, recovery for psychic trauma (or fright) was generally denied because of 1) difficulty of measuring the injury in monetary terms, 2) remoteness of physical consequences, 3) a lack of precedent and 4) the fear of increased litigation. See Prosser and Keeton, The Law of Torts (5th ed.1984) at 360; Prosser, Intentional Infliction of Mental Suffering: A New Tort, 37 Mich.L.Rev. 874, 875–878 (1939). See. also *Western Union Telegraph Co. v. Choteau, supra* note 4, 115 P. at 886 and 888.

7. *McDonald v. Time–DC, Inc.,* Okl., 773 P.2d 1252, 1255 n. 13 (1989). "Workmen's compensation is not an outgrowth of the common law or of employers' liability legislation; it is the expression of an entirely new social principle having its origins in nineteenth-century Germany." 1 Larson, Workmens' Compensation Law, § 5.00 at 33. Civil law tradition *includes both physical and psychic harm* within the meaning of the legal term *"bodily injury."* See *Floyd v. Eastern Airlines, Inc.,* 872 F.2d 1462, 1471 (11th Cir.1989).

8. See, e.g., *McDonald v. Time–DC, Inc., supra* note 7 at 1255 n. 13; *United Brick & Tile Company v. Roy,* Okl., 356 P.2d 107, 109 (1960); *Smith v. State Industrial Commission,* 182 Okl. 433, 78 P.2d 288, 289 (1938); *Indian Territory Illuminating Oil Co. v. Crown,* 158 Okl. 51, 12 P.2d 689, 692 (1932).

For other examples of "distortion of compensation law by tort concepts," see 1 Larson, Workmens' Compensation Law, § 1.20 at 2–4.

9. *Indian Territory Illuminating Oil Co. v. Crown, supra* note 8, 12 P.2d at 692.

personal insurance policy."[10] (Emphasis added.) I would today excise from the body of our case law the noncompensability of mental dysfunction. It is a concept flawed for want of textually demonstrable support and alien to the law's institutional design for workers' reparations.[11]

## II.

### THE TERMS OF THE ACT DO NOT DISALLOW COMPENSATION FOR PSYCHIC IMPAIRMENT ALONE

The decisional law upon which the court relies today manifests an erroneous interpretation of the Act and thus undermines legislative policy. The age of that authority poses no obstacle to a critical reexamination. *Courts are free to correct a past course of erroneous statutory interpretation, no matter how long-standing the aberrational jurisprudence may be.*[12] Moreover, *all* the flawed cases preserved as viable by today's pronouncement were decided *before* the Act's comprehensive

overhaul in 1977, which became effective July 1, 1978. Perhaps in response to the then-extant case law, one of the 1977 amendments came to define "permanent impairment" as including *any functional abnormality or loss, even if nonanatomical.*[13]

The present text of this state's Workers' Compensation Act makes no distinction between accidental injuries that result in *both* physical and psychic disability and those that produce *solely* functional loss from psychic impairment.[14] Mental dysfunction clearly lies within the purview of compensability. The harmful episode here in suit—claimant's physical restraint as a hostage during a prison revolt—unfolds a classic example of work-related mental strain that leaves psychic trauma in its wake.

## III.

### THIS CLAIM MEETS THE ACT'S CRITERIA OF COMPENSABILITY

*Work-related strain is ipso facto an*

---

**10.** 1 Larson, Workmens' Compensation Law, § 1.20 at 2–3.

**11.** In tort law, damages for mental anguish *unaccompanied by physical injury* may be recovered for *intentional* infliction of emotional distress. See *Williams v. Lee Way Motor Freight*, Okl., 688 P.2d 1294, 1296 (1984); *Eddy v. Brown*, Okl., 715 P.2d 74, 76–77 (1986); Restatement of Torts (Second), § 46. See also generally Prosser and Keeton, The Law of Torts (5th ed. 1984) § 54 at 359.

In some jurisdictions damages for *negligent* infliction of emotional distress may be sought as an independent tort. See, e.g., *Thing v. La Chusa*, 48 Cal.3d 644, 257 Cal.Rptr. 865, 880–881, 771 P.2d 814, 829–830 (1989); see also generally, Annot.: Comment Note—Right to recover for emotional disturbance or its physical consequences, in the absence of impact or other actionable wrong, 64 A.L.R.2d 100; Ropiequet, "Emotional Distress Claims in Medical Malpractice Cases," For the Defense, at 13 (April 1990). A *contrary view* is found in the Restatement of Torts (Second), § 436A, which states:

"*If the actor's conduct is negligent* as creating an unreasonable risk of causing either bodily harm or emotional disturbance to another, *and it results in such emotional disturbance alone,* without bodily harm or other compensable damage, *the actor is not liable for such emotional disturbance.*" (Emphasis added.)

**12.** See *Rodriguez de Quijas v. Shearson/American Exp., Inc.*, 490 U.S. ——, 109 S.Ct. 1917,

1922, 104 L.Ed.2d 526 (1989), where the Court, in order to achieve uniformity and symmetry in statutory interpretation, *overruled a 1953 case to hold a claim based on the 1933 Securities Act to be arbitrable.*

**13.** See 85 O.S.Supp.1977 § 3(11), whose pertinent terms are identical to those of that subsection's present version quoted *infra* note 14.

**14.** See the statutory definitions of "injury" and "permanent impairment," 85 O.S.Supp.1988 §§ 3(7) and 3(11), respectively, *infra.*

The terms of 85 O.S.Supp.1988 § 3(7) are:

"(7) 'Injury or personal injury' means *only accidental injuries* arising out of and in the course of employment *and such disease or infection as may naturally result therefrom* and occupational disease arising out of and in the course of employment as herein defined. Provided, *only injuries having as their source a risk not purely personal but one that is reasonably connected with the conditions of employment* shall be deemed to arise out of the employment." (Emphasis added.)

The pertinent terms of 85 O.S.Supp.1988 § 3(11) are:

"(11) 'Permanent impairment' means *any* anatomical or *functional abnormality or loss* after reasonable medical treatment has been achieved, which abnormality or loss the physician considers to be capable of being evaluated at the time the rating is made. * * *" (Emphasis added.)

**66**

accidental injury,[15] and the occurrence of an accident is a *sine qua non* of compensability.[16] *"Strain" is not confined to muscular exertion.* It includes harm-dealing forces bearing on *the mind* or on the body.[17] The present claim is for psychic deficit from a strain suffered when the claimant was held captive by prisoners during an uprising at his workplace—a state correctional facility. This claimant thus traces his functional loss to a definite on-the-job episode of harm that meets the criteria of an accidental injury prescribed in 85 O.S.Supp.1988 §§ 3(7) and 3(11).[18] The cited subsections define "injury or personal injury" and "permanent impairment."

In short, *measurable impairment from psychic deficit constitutes functional loss within the meaning of § 3(11). When, as here, the loss is medically ascribable to a stress-filled confrontational event at the workplace, the mental impairment is compensable as accident-dealt, on-the-job harm to the worker in the § 3(7) sense.*[19]

## IV.

### THE DISSENT BY KAUGER, J., WISELY COUNSELS IN FAVOR OF CHANGE THAT WOULD NOT BE APPLIED RETROSPECTIVELY

I espouse the reluctance by Kauger, J., *retrospectively* to *recede* from the noncompensability of on-the-job psychotrauma. The sharp break from the past that is counseled both in her and in this dissent should not be applied to claims other than the present. The lawmakers *must* be afforded ample time to study the effect which recovery for psychotraumatic functional loss will likely have on the private and public sectors and on current insurance rates. Were I writing for the court, I would announce today that unless contravening legislation were passed by a certain date, this court would withdraw its continued recognition of the aberrationally infused common-law norm that bars compensability for on-the-job functional loss from purely psychic deficit.[20]

## V.

### SUMMARY

Yesteryear's jurisprudence fashioned an aberrational norm when it embraced for the Workers' Compensation Act the common law's notion that an injury solely to one's mind is *damnum absque injuria* unless accompanied by physical harm. *Any accident-related functional loss (physical or psychic) is compensable under the current text* of the Act's § 3(11).

For these reasons I am in dissent from the court's pronouncement and join the views of Kauger, J.

KAUGER, Justice, with whom OPALA, Vice Chief Justice, and DOOLIN, Justice, join, dissenting:

A plain reading of the applicable statutory provisions leads invariably to two conclusions: 1) psychological injury in the absence of accompanying physical trauma is not excluded from workers' compensation coverage; and 2) it never has been. The facts presented here support the conclusion that the hostage suffered accidental personal injury during the course of his employment. Under the authority of *Vanderpool v. State*, 672 P.2d 1153, 1157 (Okla.

15. *Young v. Neely*, Okl., 353 P.2d 111, 113 (1960); *Choctaw County v. Bateman*, 208 Okl. 16, 252 P.2d 465, 468 (1953). See also *H.J. Jeffries Truck Line v. Grisham*, Okl., 397 P.2d 637, 640–641 (1964), for an explanation of "strain" in the context of a compensable accident.

16. A compensable "accidental injury" must be 1) work-related, 2) traceable to one particular event or to the cumulative effect of a series of micro-trauma and 3) in every instance, unexpected. See *Munsingwear, Inc. v. Tullis*, Okl., 557 P.2d 899, 903 (1976).

17. *Bill Gover Ford Company v. Roniger*, Okl., 426 P.2d 701, 702 (1967) (the court's syllabus ¶ 4).

18. For the terms of 85 O.S.Supp.1988 §§ 3(7) and 3(11), see *supra* note 14.

19. For the definition of an on-the-job accident, see *supra* note 16.

20. See *Vanderpool v. State*, Okl., 672 P.2d 1153, 1157 (1983).

1983), recovery should be allowed in this case, but in no others until the Legislature acts.

## I

## FACTS.

The claimant, who offered himself as a hostage to secure the release of three female hostages while attempting to mediate a crisis at the Oklahoma State Penitentiary on August 8, 1979, first suffered serious psychological problems in December of that year when he experienced marital dysfunction and extreme anxiety. Because of Fenwick's mental condition, he left the stress of the prison job, and accepted a position with a community mental health center. It is undisputed that in order to continue even at this occupation, he needs the benefit of counseling.

The State Insurance Fund recognized that Fenwick had been harmed—it paid for his medical and psychiatric treatment for almost four years. It was only after he filed a claim for permanent partial disability that the Fund denied that he had been injured in the course of his employment. If recovery is foreclosed under the Act, Fenwick is left without redress. The Governmental Tort Claims Act, 51 O.S.1981

§ 151 et seq., immunizes the state and its political subdivisions from any action arising as a result of civil disobedience, riot, insurrection, or rebellion.[1] Under similar circumstances, i.e. guard-hostage situations, the federal courts have denied recovery in 1983 actions.[2] Recovery would surely have been granted to the hostage's survivors had he been killed while being held hostage;[3] however, he is denied recovery for a life-altering trauma.

## II

## THE EVIDENCE SUPPORTS A FINDING OF ACCIDENTAL PERSONAL INJURY ARISING OUT OF THE COURSE OF EMPLOYMENT.

Even if there is no recognition of the compensability of a predominantly psychic injury, recovery should be allowed. The hostage's mental injury is associated with sufficient physical side-effects to support an award under the theory requiring physical impact. He suffered from marital dysfunction, severe headaches, tingling in his extremities, and dizziness. During the hostage situation, he was faced with an inmate wielding a homemade knife. This fact alone would be enough to support a cause of action for assault.[4] No physical contact

---

1. Title 51 O.S.Supp.1989 § 155 provides in pertinent part:
   "The state or a political subdivision shall not be liable if a loss or claim results from ... (6) Civil disobedience, riot, insurrection or rebellion or the failure to provide, or the method of providing, police, law enforcement or fire protection...."
   Provisions almost identical to the current statute have been in effect since before the claimant was taken hostage on August 8, 1979.

2. *Walker v. Rowe*, 791 F.2d 507, 510 (7th Cir. 1986), *cert. denied*, 479 U.S. 994, 107 S.Ct. 597, 93 L.Ed.2d 597 (1986); *Smith v. Dodrill*, 718 F.Supp. 1293, 1295 (N.D.W.Va.1989); *Sheets v. Indiana Dept. of Corrections*, 656 F.Supp. 733, 739 (S.D.Ind.1986).
   Title 42 U.S.C. § 1983 (1981) provides:
   "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,

shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, an Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

3. See, *Werner v. State*, 441 N.Y.S.2d 654, 657, 53 N.Y.2d 346, 424 N.E.2d 541, 544 (1981), involving the death of prison guard held hostage in a prison revolt. The New York appellate court found that recovery allowed by that state's *workers' compensation statute* was exclusive. Title 85 O.S.1981 § 3.1 defines beneficiaries of the Act's death benefit provision. Title 85 O.S. Supp.1987 § 22(8) sets out the benefits payable to the survivors.

4. The tort of assault protects a person's interest in freedom from apprehension of a harmful or offensive contact with the person. No actual contact is necessary to support a cause of action for assault. See, W. Keeton, *Prosser & Keeton on the Law of Torts*, Ch. 2, § 33, p. 43 (5th Ed. West Pub. Co. 1984). See also, Restatement

is necessary to constitute an assault. Pursuit with the intent to cause fright is sufficient.[5] All that is necessary to prove the crime of assault is a general intent to perform the act.[6] Unquestionably, the inmate intended to strike fear in his hostage. When faced with the inmate's weapon, Fenwick undoubtedly had some concern for his bodily safety.

The irony here, is that the majority, which has recognized tortious liability outside the scope of employment, will not recognize an analogous injury in the context of a job situation. The very factor which relieves the employer of tort liability—the lack of duty on the part of the employer to provide an assault-free environment—should be compensable within the Act. Even if employers in general would have no duty to protect against assaults, this situation is a more or less routine part of the work environment for a prison employee. This is not an assembly line worker. We're talking about an employee who suffers assault as an incidence of doing his job. Prison risks do not occur everyday, but they are certainly reasonably foreseeable. This is not a case of a malingerer—

(Second) of Torts § 21 (1965) which provides in pertinent part:
"(1) An actor is subject to liability to another for assault if
(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and
(b) the other is thereby put in such imminent apprehension ..."

5. *Vaughn v. Baxter*, 488 P.2d 1234, 1237 (Okla. 1971).

6. *Joplin v. State*, 663 P.2d 746–47 (Okla.Crim. App.1983); *Morris v. State*, 515 P.2d 266, 269 (Okla.Crim.App.1973).

7. Although the State's examining physician linked the claimant's mental problems to other stressful occurrences in his life, he recognized that the hostage incident and the post-traumatic stress disorder were causally related.

8. *Consolidated Freightways v. Drake*, 678 P.2d 874, 876 (Wyo.1984).

9. Although the hostage does not allege that he was sexually assaulted, and there is certainly no evidence that he was, under the majority opinion, these purely hypothetical scenarios illus-

there is no question that there was an injury here.[7] This is a case of a selfless act of heroism in which Fenwick was willing to lay down his life for his friends. This brave man exchanged his personal freedom for that of his female co-workers, and saved them from an unknown fate. Fenwick disregarded his personal safety for that of his co-workers. The result of the majority opinion is to deter rather than to provide an incentive for other employees to do the same.

## III

## THE WORKER'S COMPENSATION ACT DOES NOT EXEMPT MENTAL STRESS FROM ITS PURVIEW.

There are three types of psychic injury: 1) a mental stimulus which causes a physical injury; 2) a physical trauma which causes a nervous injury; and 3) a mental stimulus which causes a nervous injury.[8] Here, recovery is denied not because of lack of evidence of injury, but on the basis that there was no evidence of bleeding, bruising, or tearing, or of lasting physical injury, i.e., accidental personal injury.[9] It

trate the diverse and illogical results which would be reached under the majority view:

| Example | Result |
| --- | --- |
| 1) A male hostage is forced to commit oral sodomy. He does not bleed, bruise, or tear, or suffer lasting physical injury. He suffers debilitating psychological injury. | No recovery. |
| 2) A male hostage is forced to commit oral sodomy. His mouth bleeds, bruises, or tears. | Recovery allowed. |
| 3) A male hostage is forced to commit anal sodomy. He does not bleed, bruise, or tear, or suffer lasting physical injury. He suffers debilitating psychological injury. | No recovery. |
| 4) A male hostage is forced to commit anal sodomy. He bleeds, bruises, or tears. | Recovery allowed. |
| 5) A multi-partem female hostage is raped. She does not bleed, bruise, or tear, or suffer lasting physical injury. She suffers debilitating psychological injury. | No recovery. |
| 6) A virgin female hostage is raped. She bleeds, bruises, or tears. | Recovery allowed. |

is undisputed that the Act has never specifically excluded recovery for mental stress in the absence of physical injury. Nor has it specifically provided that physical trauma is a prerequisite to recovery for mental stress. The Court has engrafted this requirement to its definition of personal injury just as the Court had engrafted sovereign immunity into the common law—[10] by judicial fiat, not by legislative enactment.

The Workers' Compensation Act, 85 O.S. 1987 § 1 et seq., defines "injury or personal injury" and "occupational disease:"

" 'Injury or personal injury' means only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally result therefrom and occupational disease arising out of and in the course of employment as herein defined. Provided, only injuries having as their source a risk not purely personal but one that is reasonably connected with the conditions of employment shall be deemed to arise out of the employment."

" 'Occupational disease' means only that disease or illness which is due to causes and conditions characteristic of or peculiar to the particular trade, occupation, process or employment in which the employee is exposed to such disease."

Injury is defined as an accidental injury arising out of and in the course of employment and includes occupational diseases, infections, or illnesses naturally arising therefrom due to causes and conditions characteristic of or peculiar to the employment. Purely personal injuries are excluded from coverage, and all injuries must be reasonably connected with the conditions of employment. Although occupational disease is defined by the Act, "disease" is not. *Websters* defines "disease" as:

"... A condition in which bodily health is seriously attacked, deranged, or impaired; sickness; illness; as mortality from *disease;* a particular form or instance of such condition; a malady; an ailment; as, infectious *diseases....* Pathologically, disease is an alteration of state of the human body or any animal or plant organism, or of some of its organs or parts, interrupting or disturbing the performance of the vital functions, or a particular instance or case of this; any departure from the state of health presenting marked symptoms; also, a specific kind of such alteration; a particular ailment having special symptoms or causes; as, Addison's *disease*, Bright's *disease*, Panama *disease*, etc. Various forms of disease may be caused by parasites, filtrable viruses, and nutritional, environmental, or inherent deficiencies.... A derangement or disorder of the mind, moral character and habits ..." [11]

In *Floyd v. Eastern Airlines, Inc.,* 872 F.2d 1462, 1471 (11th Cir.1989), the Eleventh Circuit held that the Warsaw Convention (Convention) provides recovery for purely emotional injuries. Because the original treaty is written in French, the circuit court looked to the French meaning of bodily injury, *lesion corporelle*, as a basis for its determination. It found that although a literal translation of the phrase *"lesion corporelle "* would not encompass mental injury, use of the term would not by implication exclude emotional trauma. The court relied on a definition of bodily injury which under French law included "physical, mental, and moral damage, as well as any pecuiary loss resulting from personal inju-

Under the majority's position, two sexual assaults conducted under identical circumstances would reach differing results insofar as recovery under the Act is concerned. The person who is raped and bleeds, bruises, or tears, thus suffering accidental personal injury, would be compensated. The person who is raped, has a legitimate fear during the hostage situation and suffers permanent mental trauma, but does not bleed, bruise, tear, or suffer lasting physical injury, would be denied compensation. This surely cannot be. Recovery premised on past sexual experiences cannot be used as the yardstick to determine whether a rape is either benign or malignant, and whether the assault is compensable.

10. *Vanderpool v. State*, 672 P.2d 1153, 1157 (Okla.1983).

11. W. Neilson, *Websters New International Dictionary of the English Language,* p. 746 (2nd Ed. G. & C. Merriam Co., 1952).

ry." It also found persuasive an interpretation of the use of *"lesion"* along with "death" and "wounding" which encompassed and contemplated "cases of traumatism and nervous troubles ..." The circuit court determined that if the Convention had intended to limit recovery to cases of physical injury, it would have done so expressly. Case law from other jurisdictions has defined disease as a deviation from the healthy or normal condition of any of the systems or tissues of the body which impairs vital functions [12]—including derangements or disorders of the mind, or morbid conditions of the mind or spirit.[13]

An increasing number of courts are recognizing that recovery is proper for mental injuries not associated with physical impact. There is already visible a distinct majority position supporting compensability for nervous injuries.[14] The courts which find that mental injuries may be compensable absent physical impact reason that there is no valid justification for distinguishing between mental disorders— whether caused by physical impact or injury caused or aggravated by emotional stimuli—in view of the policy of workmens' compensation statutes to provide for work-related disabilities.[15] Courts which do not allow compensation for disabling mental disorders resulting from a work-related emotional stimulus reason that an emotion-

**12.** *Blalock v. City of Portland,* 206 Or. 74, 291 P.2d 218, 221 (1955); *McGregor v. General Accident Fire & Life Assurance Corp.,* 214 N.C. 201, 198 S.E. 641–42 (1938); *Brinkoetter v. Pyramid Life Ins. Co.,* 377 S.W.2d 560, 563 (Mo.App. 1964).

**13.** See, *Hood v. Texas Indem. Ins. Co.,* 146 Tex. 522, 209 S.W.2d 345, 348 (1948); *Chapman v. Finlayson Lease,* 56 Ariz. 224, 107 P.2d 196, 198 (1940) (Both cases recognize neurosis as a disease.).

**14.** 1B Larsen, "The Law of Workmen's Compensation," p. 7–639, § 42.23 (1987).

**15.** Thirty jurisdictions allow recovery for psychotrauma in the absence of physical injury: *Butler v. District Parking Management Co.,* 363 F.2d 682, 684 (D.C.Cir.1966); *American Nat'l Red Cross v. Hagen,* 327 F.2d 559, 561 (7th Cir.1964); *Globe Sec. Sys. Co. v. Workmen's Compensation Appeal Bd.,* 518 Pa. 544, 544 A.2d 953, 956 (1988); *Fought v. Stuart C. Irby Co.,* 523 So.2d 314, 317 (Miss.1988); *Wade v. Anchorage School Dist.,* 741 P.2d 634, 637 (Alaska 1987); *Gentry v. E.I. Dupont De Nemours & Co.,* 733 S.W.2d 71, 73 (Tenn.1987); *Hansen v. Von Duprin, Inc.,* 507 N.E.2d 573, 576 (Ind.1987); *Martin v. Rhode Island Pub. Transit Auth.,* 506 A.2d 1365, 1368 (R.I.1986); *Kelly's Case,* 394 Mass. 684, 477 N.E.2d 582–83 (1985); *Hartley v. Miller–Stephan,* 107 Idaho 688, 692 P.2d 332, 334 (1984); *Baker v. Wendy's of Montana Inc.,* 687 P.2d 885, 891 (Wyo.1984); *Hammons v. City of Highland Park Police Dept.,* 421 Mich. 1, 364 N.W.2d 575, 580 (1984); *McGarrah v. State Accident Ins. Fund Corp.,* 296 Or. 145, 675 P.2d 159, 170 (1983); *Breeden v. Workmen's Compensation Comm'r,* 168 W.Va. 573, 285 S.E.2d 398, 400 (1981); *Townsend v. Maine Bureau,* 404 A.2d 1014, 1020 (Me.1979); *Martinez v. University of Cal.,* 93 N.M. 455, 601 P.2d 425, 427 (1979); *Fireman's Fund Ins. Co. v. Industrial Comm.,* 119 Ariz. 51, 579 P.2d 555, 558 (1978); *Pathfinder Co. v. Industrial Comm.,* 62 Ill.2d 556, 343 N.E.2d 913, 917 (1976); *Yocom v. Pierce,* 534 S.W.2d 796, 800 (Ky.1976); *Swiss Colony, Inc. v. Department of Indus., Labor & Human Rel.,* 72 Wis.2d 46, 240 N.W.2d 128, 130 (1976); *Wolfe v. Sibley, Lindsay & Curr Co.,* 36 N.Y.2d 505, 369 N.Y.S.2d 637, 641, 330 N.E.2d 603, 606 (1975); *Royal State Nat'l Ins. Co. v. Labor & Indus. Rel. Appeal Bd.,* 53 Haw. 32, 487 P.2d 278, 282 (1971); *Burlington Mills Corp. v. Hagood,* 177 Va. 204, 13 S.E.2d 291, 293 (1941); *Badeaux v. Jim Walter Corp.,* 517 So.2d 1146, 1149 (La.App. 1987); *City of Aurora v. Industrial Comm'n,* 710 P.2d 1122–23 (Colo.Ct.App.1985); *Barrett v. Arkansas Rehabilitation Serv.,* 10 Ark.App. 102, 661 S.W.2d 439–40 (1983); *Ditler v. Workers' Compensation Appeals Bd.,* 131 Cal.App.3d 803, 182 Cal.Rptr. 839, 845 (1982); *Sargent v. Board of Educ.,* 49 Md.App. 577, 433 A.2d 1209, 1213 (1981); *Todd v. Goostree,* 493 S.W.2d 411, 420 (Mo.App.1973); *Simon v. R.H.H. Steel Laundry, Inc.,* 25 N.J.Super. 50, 95 A.2d 446, 448 (1953), *aff'd,* 26 N.J.Super. 598, 98 A.2d 604 (1953). See also, Annot., "Mental Disorders as Compensable Under Workmen's Compensation Acts," 97 A.L.R.3d 161, 166 (1980).

Ten states have disallowed such recoveries: *Winchell v. Falls Sheet Metal,* 235 Mont. 299, 766 P.2d 1313, 1315 (1989); *Sorensen v. City of Omaha,* 230 Neb. 286, 430 N.W.2d 696, 698 (1988); *Castner v. MCI Telecommunications Corp.,* 415 N.W.2d 873 (Minn.1987); *Ryan v. Connor,* 28 Ohio St.3d 406, 503 N.E.2d 1379, 1381 (1986) (Allows recovery where mental stress results in physical injury.); *Followill v. Emerson Elec. Co.,* 234 Kan. 791, 674 P.2d 1050, 1053 (1984); *Transportation Ins. Co. v. Maksyn,* 580 S.W.2d 334, 337 (Tex.1979); *Superior Mill Work v. Gabel,* 89 So.2d 794–95 (Fla.1956); *Fleming v. Appleton Co.,* 214 S.C. 81, 51 S.E.2d 363, 365 (1949); *J.C. Penney Co. v. Pigg,* 544 So.2d 169, 170 (Ala.Civ.App.1989); *Dougherty County Bd. v. Lundy,* 183 Ga.App. 550, 359

al stimulus is not an "accident" or "injury" within the meaning of the compensation statutes.[16] Some states prohibit recovery for mental or nervous injury by statutorily excluding such events from the definition of an injury arising out of the employment.[17] Although we have relied on this premise to deny recovery in the past, *the Oklahoma Act does not specifically exempt mental or neurological illness from its application.*[18] Denial of recovery for purely psychological injuries has been a judicial limitation rather than a statutory one.[19] Twenty-six jurisdictions, with similar statutes, allow recovery for properly documented cases of mental disability caused by on-the-job stress and strain.[20]

Adoption of the majority rule will not disrupt the ordinary evidentiary burden.

Rule 20 [21] of the Act sets forth the requirements for expert medical testimony. The difficulty of requiring physicians to appear at trials is recognized. The Rule provides the standards necessary for verified reports. Reports prepared for trial must contain a statement that "the evaluation is in substantial accordance with the latest 'Guides to the Evaluation of Permanent Impairment'." [22] Chapter 14 of the *Guide* is devoted to the consideration of mental and behavioral disorders. The *Guide* provides a method of evaluation of diseases causing psychiatric impairment, and it is attached hereto as Appendix I.

The use of the *Guide* as an evaluative tool is also required by 85 O.S.Supp.1988 § 3(11).[23] This section defines "permanent

S.E.2d 403, 406 (1987), *cert. denied,* 183 Ga.App. 906 (1987).

**16.** *Hanson Buick Inc. v. Chatham,* 163 Ga.App. 127, 292 S.E.2d 428–29 (1982).

**17.** In Florida, the comparable Workers' Compensation Act, Fla.Stat. § 440.02(1) (Supp.1988) provides in pertinent part:
"... 'Accident' means only an unexpected or unusual event or result, happening suddenly. A mental or nervous injury due to fright or excitement only ... shall be deemed not to be an injury by accident arising out of the employment...."
See also, *City Ice & Fuel Div. v. Smith,* 56 So.2d 329–30 (Fla.1952). Compensation is allowed if physical trauma causes mental or nervous injury. See e.g., *Marci Ann Sportswear v. Busquet,* 393 So.2d 1132–33 (Fla.App.1981).

**18.** The Workers' Compensation Act, 85 O.S. Supp.1988 § 3(7) and (10) provide:
"(7) 'Injury or personal injury' means only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally result therefrom and occupational disease arising out of and in the course of employment as herein defined. Provided, only injuries having as their source a risk not purely personal but one that is reasonably connected with the conditions of employment shall be deemed to arise out of the employment."
"(10) 'Occupational disease' means only that disease or illness which is due to causes and conditions characteristic of or peculiar to the particular trade, occupation, process or employment in which the employee is exposed to such disease."

**19.** *Ryan v. Connor,* 28 Ohio St.3d 406, 503 N.E.2d 1379, 1381 (1986).

**20.** Of the thirty jurisdictions allowing recovery, four—Massachusetts, Michigan, Wisconsin, and Rhode Island—have statutes which specifically allow recovery for mental injury. See, Mass.Gen L.Ann. ch. 152, § 1(7A) (West 1988), Mich.Comp.Laws Ann. § 418.301(2) (West Supp. 1989); R.I.Gen.Laws § 28–34–2(36) (1956), Wis. Stat.Ann. § 102.01(2)(c) (West Supp.1988). Louisianna allows recovery although a plain reading of its statute would indicate that mental injuries should be excluded from coverage. See, La.Rev.Stat.Ann. § 23:1021(7) (West 1985). The Illinois statute does not define "injury." See, Ill.Ann.Stat. ch. 48, para. 138.1 (West 1990).

**21.** Rule 20, 85 O.S.Supp.1989 Ch. 4, App. provides in pertinent part:
"... The Court, taking into consideration that it is costly and time-consuming to have physicians actually appear at the time of trial for the purpose of giving live testimony, encourages the production of medical evidence by verified or declared report which shall contain the following, where applicable:
... (i) Any other detailed factors upon which the physician's evaluation of permanent impairment is based, including a statement that the evaluation is in substantial accordance with the latest 'Guides to the Evaluation of Permanent Impairment' adopted and published by the American Medical Association which were in effect when the examination was made...."

**22.** A. Engleberg, *Guides to Evaluation of Permanent Impairment,* Ch. 14, pp. 227–233 (AMA 1988).

**23.** Title 85 O.S.Supp.1988 § 3(11) provides:
" 'Permanent impairment' means any anatomical or functional abnormality or loss after reasonable medical treatment has been

impairment" as "any anatomical or functional abnormality or loss after reasonable medical treatment has been achieved, which abnormality or loss the physician considers to be capable of being evaluated at the time the rating is made." This definition, like those of "injury or personal injury" and "occupational disease" does not specifically exclude mental injuries. Instead, its reference to "any abnormality" encompasses the physical as well as mental condition of the claimant.

Historically, legal theories have evolved to keep pace with new technological and/or medical realities. In the law of torts, it is now recognized that there is no magic inherent in the name given a tort or a classification. Therefore, infliction of mental distress now stands as a cause of action in itself rather than in a symbiotic relationship with some other traditionally recognized tort.[24] In *Gaither v. City of Tulsa*, 664 P.2d 1026, 1030 (Okla.1983), we found that a mother, who had suffered no physical injury, could recover mental anguish or emotional disturbance arising from the death of her child who drowned in a municipally erected drain. The controlling statute in *Gaither*, like the Act here, did not require a physical injury as a condition precedent to recovery.[25]

The nature of compensable injuries has changed since workers' compensation laws were originally enacted. What was once a severed limb or debilitating lung disease has become a stress-induced heart attack or a permanent psychic injury. Out of a total of 29,030 workers surveyed in 1900, only 5,115 were white-collar workers. The other 23,915 were manual and farm laborers. By 1970 the figures had changed. Of 79,802 laborers surveyed, 37,857 of those counted were in white-collar jobs. The rest, 41,868 were manual and farm workers.[26] By 1987 in Oklahoma, there were only 40,400 agricultural workers compared to 1,104,783 wage and salary earners.[27] Blue-collar workers have gone from 40 percent of the national workforce in 1950 to 30 percent in 1982. The service sector has grown from 55 percent of the workforce to over 70 percent. Over two-thirds of today's laborers are found in the fields of accounting, banking, engineering, consumer services, education, health care, legal work, transportation, wholesale, and retail trade.[28] Instead of recognizing this shift, the majority mechanically transfers the non-physical injury concept designed to deter false claims by blue collar workers in routine industrial jobs to an environment

achieved, which abnormality or loss the physician considers to be capable of being evaluated at the time the rating is made. Except as otherwise provided herein, any examining physician shall only evaluate impairment in accordance with the latest 'Guides to the Evaluation of Permanent Impairment' adopted and published by the American Medical Association. The examining physician shall not deviate from said guides except as may be specifically provided for in the guides. These officially adopted guides shall be the exclusive basis for testimony and conclusions with regard to permanent impairment with the exception of paragraph 3 of Section 22 of this title, relating to scheduled member injury or loss; and impairment, including pain or loss of strength, may be awarded with respect to those injuries or areas of the body not specifically covered by said guides."

24. W. Prosser, *The Law of Torts*, p. 52, § 12 (4th Ed. West Publishing Co. 1971); Restatement (Second) of Torts § 46(1) (1965) provides in pertinent part:
"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress ..."
The rule is not limited to cases where there has been bodily harm. See, Comment (k) to § 46.

25. The recoverable damages in a wrongful death action are set forth in 12 O.S.1981 § 1053. It provides in pertinent part:
"... The loss of consortium and the grief of the surviving spouse, which shall be distributed to the surviving spouse....
The grief and loss of companionship of the children and parents of the decedent, which shall be distributed to them according to their grief and loss of companionship...."

26. U.S. Dept. of Commerce, *Historical Statistics of the United States: Colonial Times to 1970*, p. 139 (Bureau of Census 1975).

27. N. Dikeman, Jr., *1988 Statistical Abstract of Oklahoma*, p. 417 (Center for Economic & Management Research, Univ. of Oklahoma 1988).

28. J. Wright, *The American Almanac of Jobs & Salaries*, pg. xxii (Avon 1987).

where psychic trauma is a routine component of working conditions.

In the past, before the recognition of the relationship of mental and nervous injuries to physical symptoms and behavior, there was an understandable basis, i.e., apparently insoluble evidentiary difficulties, for denying recoveries based on such injuries, both in tort and in workers' compensation law. That justification is no longer valid. The present Act predicates indemnification based, not on the label assigned to the injury—whether mental or physical, but upon the employee's inability to work because of impairments flowing from his/her employment conditions.[29]

A human being is not constituted of mere blood, bones, muscles, ligaments, and tissues. He/she also has a nervous system, a brain and a psyche.[30] The majority opinion ignores one of the major portions of the body—the nervous system. Mental stimuli may cause either physical or mental disease, and there is no creditable distinction, nor can a valid line be drawn under contemporary medical standards, between what is totally psychological and what is purely physical.[31] No reason is suggested, and none appears, why injury in the form of debilitating depression, insomnia, and headaches, as well as injury to the cardiovascular system [32] and other internal organs [33] caused by work induced mental or emotional stress and strain, should not be covered *if the cause and effect are established by competent evidence.*

The consideration of mental factors for recovery under the workers' compensation law is not new to us. In *Bill Gover Ford Co. v. Roniger*, 426 P.2d 701, 705 (Okla. 1967), we committed ourselves to the principle that heart disabilities may be caused by serial stresses and exertions, and that *strain is not confined to muscular activity, but may also consist of unusual emotional, mental, or nervous anxiety or tension.* Recovery was permitted after the Court determined that there was competent evidence to support the finding that the worker suffered a heart attack resulting from work-related strain and exertion. In reaching this result, we cited two cases from other jurisdictions—*Lobman v. Bernhard Altmann Corp.*, 19 A.D.2d 931, 244 N.Y.S.2d 425, 427 (1963), *aff'd*, 254 N.Y. S.2d 113, 202 N.E.2d 559, 15 N.Y.2d 506 (1964) and *Fink v. City of Paterson*, 44 N.J.Super. 129, 129 A.2d 746, 748 (1957)—which hold that an injury resulting from mental or emotional distress need not be accompanied by physical trauma to be compensable. *Lobman* was cited with approval for the principle that an injury caused by emotional stress or strain may be found to be accidental within the contemplation of the Workmens' Compensation Law.

The teaching of *Roniger* was followed in *Oklahoma City v. Schoonover*, 535 P.2d 688–89 (Okla.1975). The survivors in *Schoonover* received death benefits after a police officer died from a perforated ulcer initiated by on the job anxiety and apprehension. After finding that the ulcers were engendered by his working conditions and the nature of the employment, the Court held that *disability caused by emotional stress and strain or anxiety is compensable.* Recovery was allowed again in *Decker v. Oklahoma State Univ.*, 766 P.2d 1371–72 (Okla.1988), based on the same principle.

Although Mississippi had consistently denied recovery for psychological injuries caused by purely mental or emotional stimuli, in 1988, the Supreme Court reversed its traditional position in *Fought v. Stuart*

---

29. See, 1B Larson, "The Law of Workmen's Compensation," p. 7–655–56, § 42.23(a) (1987).

30. In *Indemnity Ins. Co. v. Loftis*, 103 Ga.App. 749, 120 S.E.2d 655–56 (1961).

31. See, *Bailey v. American Gen. Ins. Co.*, 154 Tex. 430, 279 S.W.2d 315, 319 (1955); Larson, "Mental and Nervous Injury in Workmen's Compensation," 23 Vanderbilt L.Rev. 1243, 1252–53 (1970).

32. *K.P. Constr. Co. v. Death of Parrent*, 562 P.2d 501, 503 (Okla.1977); *Bill Gover Ford Co. v. Roniger*, 426 P.2d 701, 703 (Okla.1967).

33. *Oklahoma City v. Schoonover*, 535 P.2d 688, 692 (Okla.1975) (Ulcer.); *Special Indem. Fund v. McFee*, 200 Okl. 288, 193 P.2d 301, 303 (1948).

*C. Irby Co.,* 523 So.2d 314, 317 (Miss.1988), and held that Mississippi workers are entitled to compensation for such injuries. The Act itself, and the time we live in, require a shifting of this Court's perspective so that the Act may be interpreted to provide coverage. By doing so, we would be joining Mississippi as well as twenty-four other jurisdictions who have held under similar statutory provisions that mental injuries may be compensable absent physical impact.

Adoption of the majority view would not constitute an abrupt break with precedent. The resolution of the question under consideration—whether compensation for an emotional, nervous, or psychological injury disassociated from overt external physical harm is precluded by the Act—has been clearly foreshadowed by the recent decisions of this Court. In *Stiles v. Oklahoma Tax Comm'n,* 752 P.2d 800, 803 (Okla. 1987), we found that work-related stress which aggravated a preexisting condition of rheumatoid arthritis was compensable. In *Decker,* we recognized that a heart attack which may have been caused by overexertion or strain, more mental than muscular, was compensable. In *Glenn v. State ex rel., Oklahoma Employment Sec. Comm'n,* 782 P.2d 150, 152 (Okla.Ct.App. 1989), released for publication by this Court, the Court of Appeals found that an employee who had resigned her job because of severe reactive depression arising from on-the-job stress was entitled to unemployment compensation. In *Bruner v. Rainbo Baking Co.,* No. 68,227 (Okla.Ct. App. Jan. 10, 1989), *cert denied,* (Okla. 1989), we denied certiorari after the Court of Appeals affirmed the award of compensation benefits for stress-related injuries.

These findings are consistent with similar cases in which we have allowed recovery for work-related heart attacks, ulcers, and other internal injuries predicated by mental stimuli.[34]

## IV

## THE PUBLIC PURPOSE OF THE ACT.

Workers' Compensation laws impose strict no-fault liability on employers for injuries or occupational diseases arising out of and in the course of employment. In exchange for a statutorily prescribed and limited measure of damages, the employer is granted immunity from tort liability,[35] and the worker abandons his/her common law right of action against the employer. The theory underlying this approach to liability is that the fiscal responsibility for employment injuries should be treated as a cost of production to be borne by the employer. Although the Act is premised on these social and economic concerns, it does not exist solely for the benefit of the employer and the employee. It is based on the principle that an industry which requires people for its operation should shoulder the burden for their care, while shifting the loss from the injuries to the worker to those who ultimately benefit,[36] i.e., the consumer. The purpose of the Act is not to indemnify a worker for injuries suffered on the job, but is rather to provide compensation for loss of earning power and the ability to work [37] when those losses are causally related to employment,[38] while not ignoring industrial and societal needs and expectations.

The existing Act is neither intended to provide a complete system of social insurance nor to require an employer to be a

**34.** See, *Flint Constr. Co. v. Downum,* 444 P.2d 200, 203 (Okla.1968); *L.E. Jones Drilling Co. v. Harris,* 403 P.2d 497, 500 (Okla.1965); *Keeling v. State Indus. Court,* 389 P.2d 487, 490 (Okla. 1964).

**35.** *Weber v. Armco, Inc.,* 663 P.2d 1221, 1224 (Okla.1983). See also, *Aetna Life Ins. Co. v. State Indus. Comm'n,* 109 Okl. 65, 234 P. 765–66 (1925).

**36.** See, *Caughman v. Columbia Y.M.C.A.,* 212 S.C. 337, 47 S.E.2d 788, 789–90 (1948); *Tedars v. Savannah River Veneer Co.,* 202 S.C. 363, 25 S.E.2d 235, 243, 147 A.L.R. 914, 924 (1943).

**37.** *Service Pipe Line Co. v. Cargill,* 289 P.2d 961–62 (Okla.1955); *J.E. Trigg Drilling Co. v. Daniels,* 193 Okl. 644, 145 P.2d 944, 946 (1943); *Mudge Oil Co. v. Wagnon,* 193 Okl. 466, 145 P.2d 185, 186 (1943).

**38.** *Wilson Foods Corp. v. Porter,* 612 P.2d 261, 264 (Okla.1980); *Loggins v. Wetumka Gen. Hosp.,* 587 P.2d 455, 459 (Okla.1978).

general health and accident insurer. Instead, the Act is an amalgamation of compromises which seek to accommodate the interests described above. Although it purports to be an exclusive remedy for workers with employment related injuries, diseases, or disorders, there are several exceptions to this rule. [For example, an intentional injury inflicted by the employer on the employee constitutes grounds for a common-law action for damages because an intentional act does not qualify as an accidental injury within the purview of the Act, nor as a risk or condition of employment.] [39]

Early in this century, Workers' Compensation Laws were enacted in response to increased industrial accidents because of inadequate and inconsistent recoveries by employees under common law doctrines and procedures. Legislatures enacted workers' compensation laws to spare employees from expensive and speculative trials which posed the prospect of no recovery for clearly job-related injuries, as well as to protect employers from excessive common law judgments with their destabilizing impact.[40]

Notwithstanding these historical roots of the Act, with their underlying public policy considerations, the ultimate social and economic decisions are still the province of the Legislature, not of the courts. Our job is to determine whether an occupational disease or an injury arising out of and in the course of employment is compensable based on the statutory directives of the Legislature as they have been construed in our jurisprudence. Generally, injuries of this sort may be organized conceptually in three groups: physical trauma causing nervous injury; mental stimuli causing physical injury; and mental stimuli causing nervous injury. The first two categories are almost universally accepted as compensable. The third has been a highly-litigated, volatile field in the development of Workers' Compensation Law.

## V

## THE *VANDERPOOL* DOCTRINE SHOULD BE INVOKED.

Apparently the majority's reason for denying recovery is that the Act does not specifically list psychological injuries as being compensable. Although this Court has decided cases which lend credence to this argument, there is nothing within the four corners of the Act which reflects that the Legislature intended to bar recovery for purely mental injuries. This exemption has been engrafted by the Court—it has never been enacted by the Legislature. We are not free to bestow greater immunity from liability on employers or greater benefits on employees than the statute allows. We cannot erect an insurmountable barrier to recovery from a doubtful, ambiguous, or silent legislative text; [41] nor may we infer immunity when it has not been statutorily

---

39. Although it purports to be an exclusive remedy for workers with employment related injuries, diseases, or disorders, there are exceptions to this rule. For example, an intentional injury inflicted by the employer on the employee constitutes grounds for a common-law action for damages because an intentional act does not qualify as an accidental injury within the purview of the Act, nor as a risk or condition of employment. *Tyner v. Fort Howard Paper Co.*, 708 F.2d 517–18 (10th Cir.1983); Title 85 O.S. Supp.1985 § 11 provides in pertinent part:

"Every employer subject to the provisions of the Workers' Compensation Act shall pay, or provide as required by the Workers' Compensation Act, compensation according to the schedules of the Workers' Compensation Act for the disability or death of his employee resulting from an accidental personal injury sustained by the employee arising out of and in the course of his employment, without regard to fault as a cause of such injury, and in the event of disability only, except where the injury is occasioned by the willful intention of the injured employee to bring about injury to himself or of another, or where the injury results directly from the willful failure of the injured employee to use a guard or protection against accident furnished for his use pursuant to any statute or by order of the Commissioner of Labor, or results directly from the intoxication or drug or chemical abuse of the injured employee while on duty...."

See also, 2A Larson, "The Law of Workmen's Compensation," p. 13–1, § 68 (1987).

40. *Aetna Life Ins. Co. v. State Indus. Comm'n*, see note 35, supra.

41. *Ingram v. State of Oklahoma*, 786 P.2d 77, 80 (Okla.1990).

76

granted. The Legislature has not expressed its intent to shield employers from liability for purely mental injuries,[42] and we may not do so by judicial caveat.

The majority uses legislative intent, i.e. legislative silence, as a shield to avoid re-evaluation of an issue that is a reality in today's society—job-related stress. We are not free to impose our own views in the interpretation of statutes. *Had the Legislature intended to exempt purely mental injuries, it could have done so—and if that is the legislative intent, it is urged to do so.*

After reaching the conclusion that the judicially imposed exclusion for psychic injury in the absence of physical trauma cannot not be supported by either reason or justice for the reasons expressed infra, and being mindful of the overwhelming trend against such restrictions, our duty under the current legislation is unmistakable.[43] However, these are matters which lie within the Legislative sphere, and its consideration of the many problems presented is invited. It may be that the Legislature would want to establish, as has been done in some jurisdictions, very stringent guidelines for recovery for purely mental injuries.[44] This is a important area, and the Legislature should act to either include or exclude mental stress, psycho trauma, or psychological injury within the purview of workers' compensation coverage. By no means is the opening of the floodgates of litigation encouraged. Until such time as the Legislature considers these matters, were I writing for the majority, under the authority of *Vanderpool*, I would allow recovery in this case, but in no others awaiting Legislative guidance.

---

42. See, *Jarvis v. City of Stillwater*, 669 P.2d 1108, 1111 (Okla.1983), *aff'd*, 732 P.2d 470 (Okla. 1987).

43. *Vanderpool v. State*, see note 10, supra.

44. See, *Bush v. Industrial Comm'n*, 136 Ariz. 522, 667 P.2d 222, 224 (1983); *Seitz v. L & R Indus., Inc.* 437 A.2d 1345, 1351 (R.I.1981); *School Dist. No. 1 v. Department of Indus., Labor & Human Relations*, 62 Wis.2d 370, 215 N.W.2d 373, 377 (1974).